MARK CUMMINGS *et al.*, Plaintiffs-Appellants, v. THE CITY OF WATERLOO, Defendant-Appellee (Wal-Mart Stores, Inc., Intervening Defendant-Appellee).

Fifth District    No. 5—96—0546

Opinion filed June 24, 1997.—Rehearing denied July 22, 1997.

476

Thomas A. LeChien, of LeChien & LeChien, Ltd., and Richard W. Thompson, both of Belleville, for appellants.

A.J. Nester and Barry D. Dix, of Kassly, Bone, Dix, Young, English & Weilmuenster, P.C., both of Belleville, for appellee City of Waterloo.

Mark S. Rohr and Floyd E. Crowder, both of Crowder & Scoggins, Ltd., of Columbia, for appellee Wal-Mart Stores, Inc.

JUSTICE HOPKINS delivered the opinion of the court:

Plaintiffs, Mark Cummings, *et al.*, appeal from an order of the Monroe County circuit court dismissing their complaint against defendant, the City of Waterloo (the City) for failure to state a cause of action. Wal-Mart Stores, Inc. (Wal-Mart), was allowed to intervene and was made a defendant in the proceeding below and is also a participant in this appeal. We affirm in part, reverse in part, and remand the cause for the reasons set forth below.

## FACTS

On June 17, 1996, the city council of the City passed ordinance

number 1013 by a simple majority of the council. In ordinance number 1013 the City sought to amend an existing ordinance to include B-3 zoning, central business use, within areas zoned I-1, light industrial use. The amended ordinance would affect seven separate zoning districts. Prior to the city council meeting, protests were filed by owners of properties directly opposite the frontage of five of the districts to be rezoned, pursuant to statute (65 ILCS 5/11—13—14 (West 1996)) and the City's zoning ordinance (Waterloo City Code § 40—8—9 (1995)).

Following the passage of ordinance number 1013, plaintiffs filed a six-count complaint against the City, seeking declaratory judgments and injunctive relief. In four of the six counts of plaintiffs' complaint, plaintiffs asserted that the passage of ordinance number 1013 was invalid because proper protests were filed, amounting to the requisite 20% required by statute (65 ILCS 5/11—13—14 (West 1996)), to trigger a two-thirds vote to pass ordinance number 1013. Ordinance number 1013 was passed by a vote of five for and three against, while a two-thirds vote would require a vote of six to two. Plaintiffs also stated in the four counts that plaintiffs' protests were properly and timely filed with the City. Plaintiffs asked that ordinance number 1013 be declared invalid and that the City be enjoined from enforcing the ordinance and from issuing a building and occupancy permit to Wal-Mart under this ordinance.

In count IV of plaintiffs' complaint, it was alleged that ordinance number 1014, also passed on June 17, 1996, and ordinance number 1009, passed by the city council on April 22, 1996, were also invalid. Plaintiffs asserted that the two parcels of property involved in these ordinances were 4.31 acres and 1.85 acres, respectively, that the two parcels were zoned B-3, and that these ordinances violated the minimum-acreage requirement for B-3 zoning in the City's zoning code. In count VI of plaintiffs' complaint, plaintiffs alleged that ordinance number 1013 was also invalid because the application for zoning amendment was signed by the mayor on behalf of the City, an action outside the scope of his authority, as only the city council had this authority.

The City answered the plaintiffs' complaint, denying that ordinance number 1013 was invalid and arguing that a two-thirds vote was unnecessary to pass ordinance number 1013. The City also filed an affirmative defense that the two-thirds vote required by statute was not applicable to a "textual" amendment of an ordinance but only applied to "map" amendments. The City also denied that the undersized parcels zoned B-3 (the 1.85 acres and the 4.31 acres) were passed in violation of the City's zoning code and denied that a request for zoning amendment can be initiated only by the city council.

Wal-Mart filed a petition to intervene, which the court allowed. Wal-Mart had purchased three tracts of land from the Schewe Family Partnership Trust and Glenn E. Schewe (the Schewes). These three parcels are the subject of this lawsuit. The zoning classification of the 1.85-acre parcel and the 4.31-acre parcel is challenged in count IV. The zoning classification of the remaining, largest parcel is challenged in counts I, II, III, and V. Wal-Mart asserted in its petition to intervene that a 1993 annexation agreement between the Schewes and the City allowed for B-3 use in the I-1 parcel of property sold to Wal-Mart by the Schewes, because at the time of the execution of the annexation agreement, B-3 use was allowed in areas zoned I-1. The property was zoned I-1 in 1993 pursuant to this annexation agreement. Wal-Mart also filed a complaint for a writ of *mandamus* against the City, asserting its right to a building permit and a certification of zoning.

Subsequently, Wal-Mart and the City filed motions to dismiss plaintiffs' complaint for failure to state a cause of action, which the trial court granted. It is from this order that plaintiffs appeal.

## ANALYSIS

The primary issue on appeal is whether the trial court erred in granting the motions to dismiss. Plaintiffs have raised seven issues in their brief; however, three of the seven issues concern the trial court's statutory construction of section 11—13—14 of the Illinois Municipal Code (65 ILCS 5/11—13—14 (West 1996)), as this was the basis of the trial court's dismissal of counts I, II, III, and V of plaintiffs' complaint. The remaining issues are that the trial court erred in finding (1) that ordinance number 1009 and number 1014 were valid, (2) that the service of two of the protests was insufficient, (3) that the mayor was authorized to sign the application for zoning amendment, and (4) that plaintiffs' complaint should be dismissed because of the 1993 annexation agreement between the Schewes and the City.

### 1. The standard of review

■ A trial court should interpret all pleadings and supporting documents in the light most favorable to the nonmoving party on a motion to dismiss under either section 2—615 or section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1996)). *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583 (1993). Further, the trial court should grant a motion to dismiss only where the plaintiff can prove no set of facts that would support a cause of action. *Toombs*, 245 Ill. App. 3d at 583. A complaint is subject to dismissal under section 2—615 if it fails to state a cause of action because of factual or legal insufficiency. *Wieseman v. Kienstra, Inc.*,

237 Ill. App. 3d 721 (1992). If a complaint fails to set forth a legally recognized claim upon which the plaintiff can recover, the complaint is infirm because of legal insufficiency, while a factually insufficient complaint fails to allege sufficient facts essential to the cause of action. *Wieseman*, 237 Ill. App. 3d 721. In a motion to dismiss under section 2—615, all well-pleaded facts and all reasonable inferences that can be drawn from these facts are accepted as true. *Wieseman*, 237 Ill. App. 3d 721. Legal conclusions and factual conclusions that are unsupported by allegations of specific facts will be disregarded in ruling on a motion to dismiss. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11 (1995). Factual deficiencies of a complaint cannot be cured by a liberal construction. *Lagen*, 274 Ill. App. 3d 11. On review of a trial court's ruling on a motion to dismiss, the trial court's judgment is granted no deference, and the case is reviewed *de novo*. *Toombs*, 245 Ill. App. 3d at 583. Section 2—615 applies to a failure to state a cause of action, either factually or legally. 735 ILCS 5/2—615 (West 1996).

2. Statutory construction of section 11—13—14

■ The trial court construed section 11—13—14 of the Illinois Municipal Code as the basis for dismissing plaintiffs' counts I, II, III, and V. Section 11—13—14 provides in pertinent part as follows:

"The regulations imposed and the districts created under the authority of this Division 13 [zoning] may be amended from time to time by ordinance after the ordinance establishing them has gone into effect ***. *** In case of a written protest against any proposed amendment of the regulations or districts, signed and acknowledged by the owners of 20% of the frontage proposed to be altered, or by the owners of 20% of the frontage immediately adjoining or across an alley therefrom, or by the owners of 20% of the frontage directly opposite the frontage proposed to be altered, is filed with the clerk of the municipality, the amendment shall not be passed except by a favorable vote of two-thirds of the aldermen or trustees of the municipality then holding office. In such cases, a copy of the written protest shall be served by the protestor or protestors on the applicant for the proposed amendments and a copy upon the applicant's attorney, if any, by certified mail at the address of such applicant and attorney shown in the application for the proposed amendment." 65 ILCS 5/11—13—14 (West 1996).

The trial court determined that counts I, II, III, and V of plaintiffs' complaint must be dismissed because the protest provisions of section 11—13—14 are not applicable to "text amendments" to ordinances but are only applicable to "map amendments" and, since the parties agree that ordinance number 1013 is a "text amendment" rather than a "map amendment," the protest provisions of the stat-

ute do not apply. The trial court also ruled that two of plaintiffs' written protests were insufficient, as the protests were not served upon the applicant or the applicant's attorney by certified mail, and that hand-delivery 15 minutes before the city council's meeting failed to satisfy the statute's requirement for service. If this construction of the statute is correct, then the trial court was correct in dismissing plaintiffs' four counts that rely upon the protest provisions, for no facts could support these counts under the trial court's construction. We begin our analysis, therefore, by determining whether the trial court correctly construed this statute. As the trial court noted in its order, this is an issue of first impression.

■ In construing a statute, a court must ascertain and give effect to the legislative intent by looking to the language of the statute and the purposes to be attained by it. *In re Annexation of Territory to the City of Park Ridge*, 260 Ill. App. 3d 384 (1994). The language of the statute is to be given its plain and ordinary meaning, unless the statute states otherwise. *Roser v. Anderson*, 222 Ill. App. 3d 1071 (1991). If two interpretations of the statute are possible, then the one that renders the statute ineffective is to be disregarded since it is presumed that the legislature intended to enact an effective law. *In re Annexation of Territory to the City of Park Ridge*, 260 Ill. App. 3d 384. Every word, clause, and section of a statute is to be attributed some reasonable meaning whenever possible. *Roser*, 222 Ill. App. 3d 1071. A statute must be construed to avoid absurd results, and an interpretation that renders any part of the statute superfluous must be avoided. *Roser*, 222 Ill. App. 3d 1071.

■ Here, we find that the trial court's construction of the statute is in error. In the court's ruling, it determined that the protest provisions only applied to map amendments. There is nothing in section 11—13—14 from which this conclusion can be drawn, for the statute does not mention any such distinction in its language. 65 ILCS 5/11—13—14 (West 1996). The trial court's interpretation adds language to the statute that does not appear. Additionally, if the statute is construed as the trial court concluded, this construction renders the phrase "the regulations" superfluous, which violates statutory construction principles.

We do not find, as the trial court did, that to apply the protest provisions to the amendment of regulations would produce an absurd result. The apparent purpose of the protest provisions is to provide landowners a process to present their concerns as to the effect of a zoning amendment on their property rights and uses. The protest by the requisite number of owners does not prevent a municipality from proceeding with a certain zoning scheme; it merely requires a greater

vote to implement the scheme. Further, if an amendment only alters an ordinance to implement a new effective date, one of the suggestions given to the trial court, the protest provisions would not apply because the amendment would not alter the property either by use or by boundary. We find that the protest provisions apply to the amendment of regulations, which is the case here, as well as to the amendment of districts. Further, as plaintiffs state in their brief, if the legislature desired a distinction between text and map amendments, the legislature would have written the statute accordingly, for the legislature made just such a distinction in section 5—12014 of the Counties Code (55 ILCS 5/5—12014 (West 1996)).

■ Having determined that the protest provisions are applicable to the amendment of a regulation or ordinance such as here, we now consider how the protest provisions apply. Under the statute, there are three categories of owners from whom protests are allowed: first, the owners of 20% of the property of the frontage to be altered; second, the owners of 20% of the frontage immediately adjoining or across an alley therefrom; or third, the owners of 20% of the frontage directly opposite the frontage to be altered. Because the legislature used the word *or*, it would appear that these categories are separate and distinct, and protests from these separate categories should not be mingled to comprise the 20% necessary under the statute.

An additional argument by plaintiffs involves whether the 20% requirement applies to each district whose frontage is being altered, thereby treating each district as a separate amendment, or whether the 20% applies to the districts as a whole unit. The statute provides that the 20% applies to "the frontage proposed to be altered." We determine that the 20% applies to all the districts to be altered where, as here, there is one amendment that makes one zoning change applicable to multiple districts, for all the districts are part of the "frontage proposed to be altered." Thus, if owners of 20% of the property in one of the three categories have filed the proper protests (in this case, 20% of the owners of property directly opposite the total frontage of the property to be altered, *i.e.*, the total frontage of all seven districts), then the supermajority vote is triggered.

The last portion of the statute to be construed is whether hand-delivered service to the applicant and the applicant's attorney is sufficient to meet the requirements of the statute. Section 11—13—14 requires that protests be filed with the clerk of the municipality and that the protest be served by certified mail upon the applicant and the attorney shown on the application, if an attorney is named. This issue has been decided in *Gary-Wheaton Bank v. City of West Chicago*,

194 Ill. App. 3d 396 (1990), where it was held that the service requirements of section 11—13—14 are mandatory rather than directory. We find the holding in *Gary-Wheaton Bank* to be well-reasoned and adopt the holding therein: service of the protests by certified mail upon the applicant and the applicant's attorney is mandatory and not directory. Having construed section 11—13—14, we now apply the statute to the instant case.

3. The court's ruling on the motions to dismiss.

■ The first consideration is whether the plaintiffs' complaint states a cause of action, factually or legally, based upon our construction of the statute. Plaintiffs asserted in counts I, II, III, and V that they filed protests for property constituting the requisite 20% under the statute to trigger the supermajority vote to enact ordinance number 1013. Plaintiffs included with their complaint 15 written protests, which plaintiffs alleged met the 20% requirement in the statute. There are two affidavits in the record, both executed by Russell Watters, in which plaintiffs calculate the total frontage of the protestors' property and the total frontage for the districts involved. Presumably, these affidavits are to support plaintiffs' allegation that the 20% requirement was met. In Watters' second amended affidavit, it is asserted that the total frontage to be altered is 14,281 lineal feet and that the total frontage of the property represented by the protests filed is 6,666.34 lineal feet. We note that in the minutes of the June 17, 1996, city council meeting, there was considerable discussion about the frontage to be altered, the percentage of frontage represented by the protests, and the requirements of the statute. Also contained in the minutes is a statement that the City's zoning officer's calculations differed greatly from Mr. Watters' calculations, *i.e.*, the frontage of the I-1 districts totalled 26,611 lineal feet and the total frontage of the protests filed was 3,689.26, for a percentage of 13.8. This evidence gives rise to a dispute over the actual footage, both total and for the protests; however, viewing the pleadings in the light most favorable to the nonmoving party, plaintiffs herein, and assuming that plaintiffs' calculations are correct, then plaintiffs have met the requisite 20% required by the statute to trigger the supermajority vote. However, our analysis does not end there, for an issue is raised over the sufficiency of two of the protests involved herein.

The two protests contested, both before the trial court and on appeal, are the Daley protest and the Schlegal protest. The written protest filed by Daley is unsigned. The statute requires that the written protest be "signed and acknowledged" by the owner of the property protesting. 65 ILCS 5/11—13—14 (West 1996). The court found

the Daley protest to be insufficient because it was not served upon the applicant and the City's attorney by certified mail; however, Daley's protest is also insufficient because it is unsigned. Therefore, the Daley protest is improper and cannot be considered in the 20% calculation.

Additionally, the trial court was not persuaded that the delivery of the protests to the clerk's office was sufficient. We note that the Daley and Schlegal protests were not stamped "received" by the clerk. Although plaintiffs argued before the trial court that the deputy clerk refused to accept service, it is not the clerk who should be served. All that is necessary under the statute is that the protests be "filed" with the city clerk; however, "service" is to be made on the applicant by certified mail. Further, it is not clear from the record whether the clerk's office refused to accept the protests or not. Under the circumstances presented here, the hand-delivery service was inadequate and the two protests that were hand-delivered cannot be considered in the 20% calculation. Disregarding the Daley and Schlegal protests, and viewing the pleadings in the light most favorable to plaintiffs and accepting their calculations as true, the plaintiffs' complaint still states a cause of action under our statutory construction of section 11—13—14, since they have alleged that their protests meet the 20% required by the statute. Plaintiffs' allegations are subject to further proof at trial. It is at trial where the quality of the evidence is evaluated, not by granting a motion to dismiss. Therefore, we reverse the trial court's dismissal of counts I, II, III, and V for failure to state a cause of action under the statute, and we remand the cause to the trial court for further proceedings on those counts.

■ Next, we consider whether counts IV and VI were properly dismissed by the court. In count IV, plaintiffs alleged that two ordinances concerning undersized parcels zoned as B-3 were invalid as the ordinances violated the City's zoning code. Under section 40—2—1 of Waterloo's zoning code, property less than 10 acres cannot be zoned B-3. Waterloo City Code § 40—2—1 (1995). The first parcel, containing 4.31 acres, was property formerly owned by the Schewes and was located in an unincorporated area contiguous to the city limits. This parcel was annexed to the City in ordinance number 1009 passed by the city council on April 22, 1996. In ordinance number 1009 it is stated in pertinent part as follows:

"WHEREAS, the legal owner of record [the Schewes] of said territory [the 4.31 acres] and the City of Waterloo have entered into a valid and binding Annexation Agreement relating to such territory; and

* * *

SECTION 3: The territory annexed to the City of Waterloo is classified under the Zoning Ordinance of the City of Waterloo pursuant to the Annexation Agreement as B-3, 'Central Business.' "

No objections were made to ordinance number 1009 at the time of the ordinance's passage. The trial court ruled in its order that the City was bound by the annexation agreement. The annexation agreement corresponding to ordinance number 1009 is not contained in the record before this court. However, plaintiffs do not dispute the validity of the annexation agreement involved in ordinance number 1009 but only contend that the ordinance was passed in violation of the City's zoning code requiring a minimum acreage for B-3 zoning. Because the annexation agreement is not present in the record, it must be inferred that the 4.31 acres were annexed pursuant to a valid and binding agreement and not under the zoning section cited by plaintiffs. We note that section 11—15.1—2 of the Illinois Municipal Code provides for annexation agreements and the City's authority to agree to zoning in annexation agreements. 65 ILCS 5/11—15.1—2 (West 1996). The statute further provides that an annexation agreement is binding on the successor owners of record of the land which is subject to the agreement and on the municipality. 65 ILCS 5/11—15.1—4 (West 1996). We must conclude that the trial court ruled correctly on count IV and properly dismissed that count.

Further, plaintiffs allege in count IV that ordinance number 1014, passed by the city council on June 17, 1996, was invalid because this ordinance rezoned the 1.85-acre parcel from A-1 to B-3, again in violation of section 40—2—1 of the City's zoning code, which requires a minimum of 10 acres for a parcel to receive B-3 zoning. The City and Wal-Mart asserted before the trial court that this parcel was rezoned pursuant to section 40—2—2 of Waterloo's zoning code. That section of the zoning code provides as follows:

"*ZONING DISTRICT EXPANSION.* An existing zoning district may be changed by expansion of said district into contiguous district, and said change need not conform to minimum district sizes, nor shall any district involved in said change be required to meet a minimum district size." Waterloo City Code § 40—2—2 (1995).

Under this section of the City's zoning code, the 10-acre requirement need not be met if the district being rezoned is contiguous to a parcel already similarly zoned. Here, the 4.31-acre parcel was already zoned B-3 at the time of the passing of ordinance number 1014, and the 1.85-acre parcel was contiguous to the 4.31-acre parcel. The court's ruling that count IV should be dismissed is proper because plaintiffs cannot allege any facts that would state a cause of action under the

City's zoning code. Ordinance number 1014 was not invalid because it was passed pursuant to statute and to city ordinance.

▮ Our next consideration is count VI of plaintiffs' complaint wherein plaintiffs alleged that ordinance number 1013 was invalid because the application for zoning amendment was signed by the City's mayor, a violation of section 40—8—1 of the City's zoning code. Waterloo City Code § 40—8—1 (1995). Under section 40—8—1 the city council can, "on its own motion, on petitions of any persons in interest, or on initial recommendations of the Board of Appeals or Planning Commission, amend, supplement, or repeal by ordinance the regulations or provisions of this Code." Waterloo City Code § 40—8—1 (1995). In count VI, plaintiffs assert that the mayor signed the application for zoning amendment on behalf of the City and, because this application was not discussed at a previous city council meeting and approved for action, the mayor had no authority to sign the application for zoning amendment.

In the trial court's order, the court determined that the mayor's signing of the application was not a violation of statute or of the City's zoning code. We find that the court's ruling was correct. Under section 3.1—35—5 of the Illinois Municipal Code, a mayor "may recommend for [the corporate authorities'] consideration measures the mayor *** believes expedient." 65 ILCS 5/3.1—35—5 (West 1996). This provision would allow the mayor to sign the application and present it through the proper procedures to the city council. The mere signing of the application does not violate the statute, and it does not violate the section of the City's zoning code relied on by plaintiffs. In the June 17, 1996, minutes of the city council meeting, it was stated that the application for zoning amendment went through all the proper procedures required to pass a zoning ordinance, i.e., it was presented to the planning commission and the zoning board of appeals before it was presented for a vote to the city council. There are no facts asserted by plaintiffs that state a cause of action in count VI. Therefore, the trial court properly granted the City's and Wal-Mart's motions to dismiss this count.

### 4. The trial court's ruling on the Schewes' annexation agreement of 1993

▮ Lastly, plaintiffs contend that the trial court's ruling that the entire complaint could be dismissed for failure to state a cause of action based upon an annexation agreement between the Schewes and the City executed in 1993 is erroneous and the court's dismissal must be reversed. Under the 1993 annexation agreement between the Schewes and the City, an unincorporated parcel of land of the

Schewes was to be annexed to the City and was to be zoned I-1. At the time of the execution of the agreement, B-3 uses were allowed in districts zoned I-1 under the City's zoning code. At some time after the execution of the 1993 annexation agreement, the City amended the zoning code and eliminated B-3 uses from districts zoned I-1.

The annexation agreement involved herein states in pertinent part as follows:

"The City agrees that after the property described in Appendix 'C' is annexed to the City *** it shall be zoned 'I-1'."

Plaintiffs contend that, because there is no language in the agreement prohibiting subsequent amendment of the ordinance restricting I-1 uses, the Schewes and their successors (here Wal-Mart) are only allowed the uses permitted in I-1 districts under the current zoning code. According to plaintiffs' argument, because of the language of the annexation agreement, when I-1 uses are expanded by an amendment to the ordinance, the uses on the Schewes' property are expanded, but when I-1 uses are restricted by an amendment to the zoning code, then the uses of the Schewes' property are similarly restricted. Wal-Mart and the City argue they are entitled to the uses allowed for I-1 zoning districts in 1993, the time of the execution of the annexation agreement, for to hold otherwise would deprive the parties to the agreement of the benefit of their bargain. We agree with Wal-Mart and the City. At the time of the annexation agreement, the Schewes could have enforced the agreement to allow B-3 uses. The length of the agreement was for 20 years. The agreement is binding and can be enforced under the same terms as when executed, for that is part of the bargain to which the parties agreed. See *Union National Bank v. Village of Glenwood*, 38 Ill. App. 3d 469 (1976). Thus, the annexation agreement between the Schewes and the City was a valid, binding contract, and Wal-Mart, as successor to the Schewes' property, is entitled to have the contract enforced as written. Wal-Mart is entitled to B-3 uses on the property zoned I-1, based upon the annexation agreement. 65 ILCS 5/11—15.1—2, 11—15.1—5 (West 1996); *People ex rel. NBD Trust Co. v. Village of Hoffman Estates*, 234 Ill. App. 3d 59 (1992). The trial court was correct in finding the annexation agreement a valid, binding contract; however, we agree with plaintiffs that the annexation agreement would not be a basis for dismissing their entire complaint. The trial court's holding that the annexation agreement was a basis for dismissing plaintiffs' entire complaint is reversed.

In summary, we reverse the trial court's ruling dismissing counts I, II, III, and V of plaintiffs' complaint, and we remand for further proceedings on those counts; we affirm the trial court's dismissal of

counts IV and VI; and we affirm the trial court's finding that the 1993 annexation agreement between the Schewes and the City is a valid, binding contract, but we reverse the trial court's ruling that the annexation agreement is a basis for dismissing plaintiffs' entire complaint.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Monroe County dismissing plaintiffs' complaint for failure to state a cause of action is affirmed in part and reversed in part, and this cause is remanded.

Affirmed in part and reversed in part; cause remanded.

MAAG and RARICK, JJ., concur.