R.P. LUMBER COMPANY, INC., Petitioner, v. THE OFFICE OF THE STATE FIRE MARSHAL *et al.*, Respondents.

Fifth District No. 5—96—0734

Opinion filed December 17, 1997.

Stephen F. Hedinger, of Mohan, Alewelt, Prillaman & Adami, of Springfield, for petitioner.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of counsel), for respondents.

JUSTICE KUEHN delivered the opinion of the court:

R.P. Lumber Company, Inc. (R.P. Lumber), appeals from the October 17, 1996, order of the Pollution Control Board (Board) affirming the May 20, 1994, determination of the Office of the State Fire Marshal (OSFM) that R.P. Lumber's underground storage tank (UST) remediation reimbursement request was subject to a $100,000 deductible. We affirm.

The land involved in this case is located in downtown Edwardsville in Madison County. In April 1986, this entire land parcel was owned by Illinois Lumber. In December 1994, R.P. Lumber purchased the last section of this property, which made it the sole owner of the original Illinois Lumber parcel. R.P. Lumber acquired this property by making four separate land purchases.

On April 14, 1986, Illinois Lumber registered a UST with the OSFM. Later that year, on September 26, 1986, R.P. Lumber purchased its first section of this Illinois Lumber property. What R.P. Lumber did not know at the time of the purchase and would not discover for many years was that there were two unregistered USTs on this piece of property.

On April 14, 1988, R.P. Lumber purchased the second portion of this property from Illinois Lumber.

Sometime after R.P. Lumber's second purchase, the Bank of Alton foreclosed on the remainder of the property. In October 1991, the Bank of Alton removed and subsequently cleaned up the area of the April 14, 1986, registered UST.

On December 31, 1991, R.P. Lumber purchased the third portion of this property from the Bank of Alton. This third portion did not contain the area of the October 1991 remediation.

Sometime in 1992, R.P. Lumber discovered the first unregistered UST on the first parcel purchased. Because of the early date that this UST was removed from service, it was not necessary to register it with the state. On October 22, 1992, the OSFM designated this UST with a facility number. On December 3, 1992, R.P. Lumber removed this UST and discovered the second unregistered UST. On December 16, 1992, R.P. Lumber registered the second UST with the OSFM.

On February 18, 1993, R.P. Lumber removed the second UST and discovered a significant petroleum release requiring remediation. R.P. Lumber promptly notified the Illinois Emergency Management Agency, and an incident number was issued.

R.P. Lumber asked the OSFM to determine its eligibility for access to the Illinois UST fund for remedial activities. On May 20, 1994, the OSFM concluded that R.P. Lumber was eligible for fund access and determined that the applicable deductible was $100,000.

R.P. Lumber petitioned the Board on June 24, 1994, to challenge the OSFM's deductible determination, contending that under the applicable statutory provisions, a $15,000 deductible was applicable.

In December 1994, R.P. Lumber purchased the fourth parcel from the Bank of Alton, finally owning the totality of the land originally owned by Illinois Lumber in 1986. This fourth parcel contained the area previously cleaned up by the Bank of Alton.

On July 7, 1995, the Board affirmed the OSFM determination that the $100,000 deductible was factually applicable, by granting the OSFM's partial summary judgment motion. The Board stayed this matter pending appellate court review of a similar action. That case addressed issues that are not before us on this appeal. On October 17, 1996, following the disposition of that similar case, the Board entered its final order affirming the OSFM's May 20, 1994, determination.

R.P. Lumber appeals.

■ Our review of the Board's decision includes all legal questions previously raised. *Township of Harlem v. Environmental Protection Agency*, 265 Ill. App. 3d 41, 44, 637 N.E.2d 1252, 1254 (1994). We are not bound by the Board's decision. *Township of Harlem*, 265 Ill. App. 3d at 44, 637 N.E.2d at 1254. However, the Board's decision should be accorded deference and should be upheld if not erroneous. *Township of Harlem*, 265 Ill. App. 3d at 44, 637 N.E.2d at 1254.

■ Owners and operators of USTs must register the USTs with the OSFM. 430 ILCS 15/4(b) (West 1994). Owners and operators of USTs are responsible for their removal, repair, and remediation. 415 ILCS 5/57.1 (West 1994).

The OSFM has the authority to determine whether an owner or operator of a UST is eligible to receive compensation for corrective-action costs from the Underground Storage Tank Fund (the Fund). 415 ILCS 5/57.9(c) (West 1994). An owner can access the Fund if it meets certain criteria. 415 ILCS 5/57.9(a) (West 1994). If the UST contained nonexempt fuel, if the UST was properly registered, if appropriate notice of a confirmed petroleum release was provided to the Illinois Emergency Management Agency, and if all costs were incurred as a result of the petroleum release, the UST owner or operator may be able to access the Fund. 415 ILCS 5/57.9(a) (West 1994).

A deductible amount is applied to applications for Fund reim-

bursement. 415 ILCS 5/57.9(b) (West 1994). If none of an owner's USTs were registered prior to the legislation's effective date, July 28, 1989, the applicable deductible is $100,000. 415 ILCS 5/57.9(b)(1) (West 1994). If one or more, but not all, of an owner's USTs were registered prior to July 28, 1989, and the appropriate agency received notice of the release after that date, the applicable deductible is $15,000. 415 ILCS 5/57.9(b)(3) (1994). These varying deductible amounts serve a legitimate state interest encouraging UST registration so that the state knows its approximate UST population. *Stroh Oil Co. v. Office of the State Fire Marshal*, 281 Ill. App. 3d 121, 130, 665 N.E.2d 540, 547 (1996).

Before the remediation costs are reimbursed to the owner, a number of other legal requirements must be met. See 415 ILCS 5/57.9 (West 1994). At this time, there is no issue about whether R.P. Lumber is eligible for compensation or whether its claim satisfies those legal payment prerequisites. The only issue is which deductible amount is applicable.

The OSFM's deductible eligibility decision, affirmed by the Board, was based upon the fact that no UST was located on R.P. Lumber's property *at the time of the release* for which remediation was necessary and Fund reimbursement was sought. The Board's order affirming the OSFM's decision stated that the original determination was correct because none of the USTs at issue were registered prior to July 28, 1989.

The statutory language that sets forth the deductibility eligibility and requirements is specific. We now turn to that statutory language for application to the relevant R.P. Lumber application facts.

■ The owner or operator is eligible to access the UST fund related to confirmed releases from a UST. The deductibles lower than $100,000 apply to owners or operators who registered their USTs on or before July 28, 1989. Assuming that R.P. Lumber is an owner or operator, and although R.P. Lumber claims that it had no knowledge of the USTs' existence, there is no dispute that R.P. Lumber did not register the UST at issue before that date. Therefore, the only way in which R.P. Lumber would be entitled to the lower $15,000 deductible is if it was an owner or operator of property on which there was a UST registered prior to July 28, 1989. There is no dispute that no registered USTs were on any of the property segments owned by R.P. Lumber on the dates of the release or the application to the fund.

R.P. Lumber contends that it is the owner of the property for which application to the Fund is made. Without referring to specific statutory language, R.P. Lumber argues that because Illinois Lumber registered a UST in 1986 on the fourth segment of the property, a

UST was registered prior to the July 28, 1989, date and that therefore the $15,000 deductible is applicable. The problem with this argument is that at the time R.P. Lumber sought access to the Fund, R.P. Lumber did not own that portion of the original Illinois Lumber property containing the registered UST. If that fact is to be ignored, as R.P. Lumber suggests, and if we give credence only to the date when the UST was registered, the "owner" of the UST was Illinois Lumber. Nothing in the relevant statutes suggests that R.P. Lumber's suggested statutory construction about the registration date is correct. If R.P. Lumber owned the entire original Illinois Lumber property when it discovered the release and applied to the Fund, then R.P. Lumber could have argued for the $15,000 deductible, since a UST on its property was registered prior to July 28, 1989. However, the property was sold piecemeal. The land with the UST to which R.P. Lumber attempts to attach itself was owned by someone else at the time when the Fund application was made. The relevant statutes repeatedly make reference to "applying to the Fund" for reimbursement. Logic dictates that the OSFM would look to the property in issue upon which an application for reimbursement is based. We do not believe that the agency should be required to historically research other properties not presently owned by the applicant—even if the property is adjacent to the applicant's property.

Furthermore, the UST upon which R.P. Lumber relies was not even in existence when the release was discovered and it made application to the Fund. The Bank of Alton had already removed the UST from the ground. So, when R.P. Lumber ultimately purchased this fourth segment, the UST was no longer a part of the property. As the legislative intent behind UST registration is not served by allowing the registration of previously removed USTs (see *OK Trucking Co. v. Armstead*, 274 Ill. App. 3d 376, 380, 653 N.E.2d 863, 866 (1995)), we infer that allowing dependence upon a previously removed registered UST from a parcel owned by another is similarly contrary to legislative intent.

In construing statutory provisions, the statute's language must be given its plain and ordinary meaning. *Maloney v. Bower*, 113 Ill. 2d 473, 478, 498 N.E.2d 1102, 1104 (1986). R.P. Lumber asks us to stretch the statutory deductible provisions beyond what the legislature could have possibly intended. We are unaware of any other Illinois court decision making this extension. We decline to do so. We defer to the Board's interpretation of its own statutes and find that its holding was not erroneous.

Accordingly, the judgment of the Pollution Control Board is hereby affirmed.

Affirmed.

MAAG and GOLDENHERSH, JJ., concur.