ENVIRONMENTAL CONTROL SYSTEMS, INC., *et al.*, Plaintiffs-Appellants, v. J. THOMAS LONG *et al.*, Defendants-Appellees.

Fifth District   No. 5—97—0690

Opinion filed December 9, 1998.

Gary E. Peel, of Peel, Beatty & Walters, of Edwardsville, and Anton R. Valukas, William A. Von Hoene, Jr., and David Jimenez-Ekman, all of Jenner & Block, of Chicago, for appellants.

Gordon R. Broom and Gary A. Meadows, both of Burroughs, Hepler, Broom, MacDonald & Hebrank, of Edwardsville, for appellees.

JUSTICE KUEHN delivered the opinion of the court:

The case within this legal malpractice case involves the Illinois Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1001 et seq.). The alleged malpractice occurred at both the county board and appellate court levels. Environmental Control Systems, Inc. (ECS), and J. Douglas Andrews, Eric Andrews, and Joel Andrews appeal from three trial court rulings.[1] ECS is an Illinois corporation that was developing a recycling center and sanitary landfill otherwise known as a regional pollution control facility (RPCF). J. Douglas Andrews, Eric Andrews, and Joel Andrews are ECS's shareholders and officers. These three orders completely dispensed with plaintiffs' case. We affirm in part, reverse in part, and remand.

From 1990 through 1995, attorney J. Thomas Long and the Farrell Law Firm, P.C.,[2] represented ECS in its attempts at obtaining a siting permit for the proposed RPCF. Defendants also represented the Andrews in their individual capacities as shareholders. The Andrews were attempting to sell their ECS shares. Sale of the shares was contingent upon obtaining RPCF approval during the siting process.

The statutory process to obtain siting approval for an RPCF requires the approval of the Madison County Board. Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(a). Prior to obtaining the Madison County Board's approval, the applicant must publish notice of intent to seek approval. Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(b). The applicant must also provide notice of intent to all property owners whose property is located within 250 feet of the lot line at issue. Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(b). The applicant must submit an application to and participate in a hearing before the county board. Ill. Rev. Stat. 1989, ch. 111½, pars. 1039.2(c), (d). All appeals from the county board's decisions are heard by the Illinois Pollution Control Board. Ill. Rev. Stat. 1989, ch. 111½, par. 1040.1(a). Appeals from Illinois Pollution Control Board decisions are heard in the appellate courts. Ill. Rev. Stat. 1989, ch. 111½, par. 1041(a).

---

[1]For simplicity, ECS and the Andrews will hereinafter be referred to collectively as *plaintiffs*, unless it is factually appropriate to refer to one singularly.

[2]Attorney Long and the law firm will be referred to as *defendants* throughout this opinion.

The proposed RPCF site was located in Madison County. At the end of May 1990, defendants began the statutory approval process by notifying the required landowners of ECS's intent. Two owners of land within 250 feet of the lot line were not notified.

In July 1990, the Andrews negotiated and executed a contingent stock sale agreement by which they would sell their ECS shares to Community Landfills for more than $2.3 million. This stock sale was made contingent upon ECS's site application approval. The contract provided that 36 days after the Madison County Board approved ECS's site application, Community Landfills would make a partial payment of $410,000 to the Andrews. The contract further provided that 45 days after the Madison County Board's approval, Community Landfills would pay an additional $100,000. However, if an appeal was taken from the Madison County Board's site application approval, no partial payments would be made.

The Madison County Board approved ECS's application on November 14, 1990, despite ECS's failure to notify the two landowners.

On December 18, 1990, several individuals and a group known as the Madison County Conservation Alliance filed a petition with the Illinois Pollution Control Board (PCB) contesting the Madison County Board's RPCF application approval. This petition alleged that at least one property owner within 250 feet of the proposed RPCF site did not receive the required statutory notice. A hearing was held on April 11, 1991, following which the PCB vacated the November 14, 1990, Madison County Board decision. The PCB vacated the certification expressly because the two landowners did not receive notice of ECS's application.

On April 30, 1991, Community Landfills sent plaintiffs notice that they were in breach of the stock sale agreement because the two landowners did not receive notice.

On May 9, 1991, ECS, through defendants' representation, sought judicial review in this court of the April 11, 1991, PCB ruling. The petition for review named the PCB, the Madison County Conservation Alliance, and eight individuals as respondents. While the Madison County Board was a party to the PCB proceedings, defendants did not include the board as a party to the judicial review. Several issues were raised on appeal, but ECS primarily argued that they were not required to give notice to the two landowners in issue pursuant to section 39.2(b) of the Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(b)). Defendants' legal opinion was that section 39.2(b) only required landowner notification with respect to proximity to the RPCF itself. The landowners were not located within 250 feet of

the actual RPCF but were within 250 feet of the larger lot line upon which the RPCF was situated. On March 22, 1994, this court dismissed ECS's appeal on the technical jurisdictional basis that ECS failed to name the Madison County Board as a party. *Environmental Control Systems, Inc. v. Pollution Control Board*, 258 Ill. App. 3d 435, 630 N.E.2d 554 (1994).

On April 26, 1994, ECS filed a petition for leave to appeal with the Illinois Supreme Court. While this petition was pending, ECS president Douglas Andrews consulted with other counsel to determine whether there was anything that could be done to save the site permit process and whether or not ECS had a malpractice claim against defendants. On June 1, 1995, the Illinois Supreme Court denied ECS's petition for leave to appeal. *Environmental Control Systems, Inc. v. Pollution Control Board*, 162 Ill. 2d 565, 652 N.E.2d 340 (1995).

While the appeal in this court was pending, plaintiffs sought status reports from defendants on four occasions—July 23, 1991, October 21, 1991, November 18, 1991, and December 26, 1991. Defendants first responded to these four requests on December 30, 1991. In that report, defendants assured plaintiffs that there was a "good chance of success" on appeal. On May 25, 1993, after oral argument, counsel advised plaintiffs of their "reasonable opportunity to prevail on the merits." The law firm remained confident despite this court's adverse ruling, relating to plaintiffs in a report dated June 7, 1994, that there was "a good chance that the Supreme Court will take the case."

On September 14, 1995, Community Landfills again notified plaintiffs that they were in breach of the stock sale agreement, and it claimed $10 million in damages.

On November 29, 1995, plaintiffs filed suit against defendants, alleging malpractice. Plaintiffs alleged that defendants were negligent at the county board level by failing to give notice to the two landowners. They also alleged that counsel committed malpractice by failing to name the Madison County Board as a party on appeal from the PCB's decision. Plaintiffs further sought implied indemnity from defendants for the prospective liability they faced from Community Landfills. Finally, the individual Andrews separately alleged malpractice. The Andrews claimed that they could not sell their ECS shares without the siting permit. After lengthy written and oral arguments, the trial court made the following rulings:

- On September 3, 1996, the court dismissed the implied indemnity claims of both ECS and the individual plaintiffs.
- On March 13, 1997, the court dismissed all of the individual plaintiffs' malpractice claims and granted summary judgment against ECS on the malpractice count that alleged defendants' failure to notify the two landowners.

- On July 29, 1997, the court granted summary judgment against ECS on its malpractice claim which alleged that defendants failed to name the Madison County Board as a respondent to its notice of appeal from the PCB decisions.

From these orders, plaintiffs appeal.

■ We first address the court's September 3, 1996, and March 13, 1997, dismissals. The dismissals were both made pursuant to motions under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1994)). We consider the trial court's rulings *de novo*. *Cummings v. City of Waterloo*, 289 Ill. App. 3d 474, 479, 683 N.E.2d 1222, 1225 (1997). With a section 2—619 motion to dismiss, a trial court should construe all pleadings with supporting documentation in the light most favorable to the nonmoving party. *Cummings*, 289 Ill. App. 3d at 478, 683 N.E.2d at 1225; *Toombs v. City of Champaign*, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50, 51 (1993). The motion should only be granted if the plaintiff cannot prove any set of facts supportive of the cause of action. *Cummings*, 289 Ill. App. 3d at 478, 683 N.E.2d at 1225; *Toombs*, 245 Ill. App. 3d at 583, 615 N.E.2d at 51. All well-pleaded facts, along with all reasonable inferences that can be drawn therefrom, should be accepted as accurate. *Cummings*, 289 Ill. App. 3d at 479, 683 N.E.2d at 1225.

The trial court's September 3, 1996, order dismissing plaintiffs' implied indemnity claims is devoid of any conclusional foundation. Defendants' motion to dismiss those implied indemnity claims is based upon the prospective nature of the claims. Plaintiffs assert claims for their potential liability to Community Landfills, although to date Community Landfills has not filed a claim. It appears that the trial court's decision is based on this issue of maturity.

■ We do not reach the issue of whether plaintiffs can state implied indemnity claims when faced with mere potential liability, because we conclude that plaintiffs have waived their right to raise this issue on appeal. Plaintiffs' second amended complaint contained the implied indemnity counts. On September 13, 1996, pursuant to defendants' motion to strike and dismiss, the trial court dismissed these counts, as well as the balance of the complaint. Plaintiffs were granted leave to file a third amended complaint. In the third amended complaint, plaintiffs dropped the implied indemnity claims.

On this issue, the law is strict. To preserve a trial court's ruling dismissing a complaint for appellate review, the plaintiff cannot abandon the disputed counts from subsequent versions of the complaint. *Boatmen's National Bank v. Direct Lines, Inc.*, 167 Ill. 2d 88, 99, 656 N.E.2d 1101, 1106 (1995). Deleting the implied indemnity counts results in the waiver of plaintiffs' objections to the trial court's

September 13, 1996, order. To preserve the issue, plaintiffs should have stood on the dismissed complaint and sought an order dismissing those counts with prejudice. *Boatmen's National Bank*, 167 Ill. 2d at 99, 656 N.E.2d at 1106. Because the issue was not preserved, we will not address it.

■ On March 13, 1997, the trial court dismissed six counts of plaintiffs' third amended complaint with prejudice. These six counts were the Andrews' legal malpractice claims. The trial court's order was silent as to its basis. We therefore turn to defendants' motion to dismiss. Defendants' memorandum of law in support of their motion to dismiss starts with the conclusory premise that the attorney/client relationship between defendants and ECS was primarily for ECS's benefit. From this premise, the defendants' argument leaps to the conclusion that the Andrews lack standing to sue individually. The analysis of this issue focuses upon the duty owed to a third-party beneficiary. We do not necessarily dispute the law defendants cite regarding third-party beneficiary duties in the legal malpractice setting. We just do not think that this case presents a third-party beneficiary situation to which that law would apply.

The problem with defendants' analysis begins with the premise of primary legal representation. Defendants seem to pull this fact out of the air, as there are no allegations to this effect, plus defendants cite to no factual support in the record. In fact, the complaint specifically alleges that each of the individual plaintiffs was defendants' direct client. The third-party beneficiary law cited by defendants deals with cases where attorneys owe a duty to someone who is not a direct client. The complaint also alleges that the malpractice occurred within the scope of the legal representation to the individual plaintiffs. Specifically, the complaint alleges that defendants agreed to take all steps necessary to promote the Andrews' sales of shares to Community Landfill. As all well-pleaded facts, along with all reasonable inferences that can be drawn therefrom, should be accepted as accurate (*Cummings*, 289 Ill. App. 3d at 479, 683 N.E.2d at 1225), we conclude that the trial court's order dismissing the Andrews' malpractice claims was erroneous.

■ We next turn to the summary judgment orders entered by the trial court. In determining the appropriateness of summary judgment, the trial court strictly construes all evidence in the record against the movant and liberally in favor of the opponent. *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). The court must consider all pleadings, depositions, admissions, and affidavits on file to decide if there is any issue of material fact. *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 72, 587 N.E.2d 494, 497 (1992). On appeal, courts

review summary judgment orders *de novo. Myers*, 225 Ill. App. 3d at 72, 587 N.E.2d at 497. Because summary judgment is a drastic remedy, the moving party's right to judgment must be clear. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630 (1994), citing *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.

On March 13, 1997, the trial court entered summary judgment in defendants' favor on one count of plaintiffs' third amended complaint. That count was ECS's claim of legal malpractice against defendants for failure to give notice of application to the two landowners. Although the record is silent as to the trial court's reasoning in entering judgment on this count, it can be inferred that the court found that ECS's claim was barred by the two-year statute of limitations for legal malpractice. Ill. Rev. Stat., 1990 Supp., ch. 110, par. 13—214.3.

■ That statute provides that a malpractice action "against an attorney *** must be commenced within two years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." Ill. Rev. Stat., 1990 Supp., ch. 110, par. 13—214.3(b). Legal malpractice lawsuits that accrued prior to January 1, 1991, were subject to a five-year statute of limitations. Ill. Rev. Stat. 1989, ch. 110, par. 13—205. This lawsuit was originally filed on November 29, 1995. Defendants contend that this particular malpractice action accrued on or about April 11, 1991, the date on which the PCB vacated the Madison County Board approval for lack of jurisdiction, and thus was subject to the two-year statute. A legal malpractice cause of action accrues when the client knows or should know the facts that establish the cause's elements. *Goodman v. Harbor Market, Ltd.*, 278 Ill. App. 3d 684, 687, 663 N.E.2d 13, 16 (1995). One of these elements is damages, and, therefore, the cause cannot accrue until actual damage is triggered. *Belden v. Emmermann*, 203 Ill. App. 3d 265, 268, 560 N.E.2d 1180, 1181 (1990). Defendants argue that since ECS knew of the April 11, 1991, order, they knew sufficient facts establishing their cause of action against defendants on that date. The three Andrews testified in their depositions that each became aware of the PCB decision shortly after it was delivered.

■ The precise time when a party has the required knowledge to maintain a legal malpractice action is generally considered a question of fact. *Jackson Jordan, Inc.*, 158 Ill. 2d at 250, 633 N.E.2d at 631. Summary judgment is appropriate where the undisputed facts point to only one conclusion. *Jackson Jordan, Inc.*, 158 Ill. 2d at 250, 633 N.E.2d at 631. In cases where the statute of limitations defense is utilized, the doctrine of equitable estoppel bars a party accused of malpractice from raising the defense where he reassured the aggrieved

party of his case's legal foundation, resulting in a delay in filing suit. *Jackson Jordan, Inc.*, 158 Ill. 2d at 252, 633 N.E.2d at 632.

■ In this case, it is possible that the cause of action accrued on the date defendants advance—April 11, 1991—and was therefore subject to the two-year statute. It is also possible that the cause arose on December 18, 1990, when the petition was filed contesting the Madison County Board's siting approval. While that would certainly bring the case within the applicable five-year statute, whether ECS was damaged is questionable since the siting approval was still intact. However, the individual plaintiffs certainly sustained damages because they missed out on the first round of stock sale payments. Other optional cause-of-action accrual dates are as follows: March 22, 1994, when the appellate court dismissed the appeal; July 1994, when plaintiffs received legal advice from another source; or June 1, 1995, when our supreme court declined to address the petition for leave to appeal.

Simply stated, the accrual of plaintiffs' cause of action is not clear-cut. A question of fact remains, and therefore summary judgment was improper.

Even if the April 11, 1991, date was the only logical accrual date, we conclude that defendants are equitably estopped from raising the statute of limitations defense against plaintiffs because of their continuous representations of the appeal's likelihood of success. In light of the correspondence detailed earlier in this opinion, we find that plaintiffs were "lulled into a false sense of security by the firm's soothing reassurances and advice." *Jackson Jordan, Inc.*, 158 Ill. 2d at 253, 633 N.E.2d at 632.

■ We next address the trial court's July 29, 1997, order granting summary judgment as to count II of ECS's complaint. Count II was ECS's claim of legal malpractice against defendants for failure to name the Madison County Board as a party on appeal. Once again, the record is silent as to the trial court's reasoning in entering judgment on this count. Looking to defendants' motion for summary judgment and accompanying memorandum of law filed in the trial court, we believe that the trial court concluded that proximate causation, in an appellate legal malpractice context, must be decided by the court as a matter of law. We also believe that the trial court concluded, as a matter of law, that the appellate court would not have given ECS relief if the appeal had been considered on its merits. The underlying issue on appeal was whether the 250-foot rule applied to the RPCF or to the larger plot of land upon which the RPCF was situated. That issue has not been decided by an Illinois appellate court to date. This court did not reach that novel issue because ECS failed to include the Madison County Board as a party to the appeal.

In concluding that proximate-causation issues in appellate legal malpractice cases present questions of law, defendants rely upon a Michigan Supreme Court case, *Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 513 N.W.2d 773 (1994). Defendants correctly cite this case but ignore Illinois law on this issue. Illinois appellate courts have held that proximate causation in a legal malpractice case presents a question of fact. See *Gelsomino v. Gorov*, 149 Ill. App. 3d 809, 815, 502 N.E.2d 264, 268 (1986); *Public Taxi Service, Inc. v. Barrett*, 44 Ill. App. 3d 452, 456, 357 N.E.2d 1232, 1236 (1976). With respect to the more limited issue of appellate legal malpractice, we find no Illinois case on point.

We agree with the reasoning of the Michigan Supreme Court and conclude that the issue of proximate causation in an appellate legal malpractice case should be decided by the courts as a matter of law.

In a legal malpractice case alleging that an attorney failed to perfect an appeal, the client must prove that he would have been successful on appeal if the appeal had properly been perfected. *Chicago Red Top Cab Ass'n v. Gaines*, 49 Ill. App. 3d 332, 333, 364 N.E.2d 328, 329 (1977). Whether or not the underlying appeal would have been successful necessarily involves legal analysis.

■ Our state constitution places the state's judicial power in the court system. Ill. Const. 1970, art. VI, § 1. That judicial power includes the power to determine and analyze the applicable law. *People v. Nicholls*, 71 Ill. 2d 166, 179, 374 N.E.2d 194, 199 (1978); *Wright v. Central Du Page Hospital Ass'n*, 63 Ill. 2d 313, 322, 347 N.E.2d 736, 739 (1976). The court's exercise of this power is not meant to usurp the jury's role but is done because "its role in the constitutional order and justice system is to declare what the law is." *Charles Reinhart Co.*, 444 Mich. at 593, 513 N.W.2d at 779. As the issue of whether or not plaintiffs would have met with appellate success involves an analysis of Illinois law, we determine that this legal question should properly be decided by the court. The conventional role of the jury remains intact. That role is a fact-finding role—determining what happened, when it happened, and how it happened. *Charles Reinhart Co.*, 444 Mich. at 602, 513 N.W.2d at 782-83. Furthermore, this ruling should not impact the jury's role in ordinary legal malpractice cases.

This reasoning is not based upon a jury's ability to decide complicated causation issues. Juries frequently address complicated and highly technical issues. As the Michigan Supreme Court pointed out, this reasoning is premised upon the court's special constitutionally based judicial power to determine and apply the laws of the state. *Charles Reinhart Co.*, 444 Mich. at 593, 513 N.W.2d at 779.

The different standards of review applicable to court and jury de-

cisions lend support to our determination. An appellate court's ability to reverse a jury's erroneous verdict is limited. *Charles Reinhart Co.*, 444 Mich. at 594-95, 513 N.W.2d at 779-80. A court can only reverse a verdict in situations where it finds that the jury's verdict is contrary to the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 455-56, 603 N.E.2d 508, 513 (1992). Whereas, if a legal question is decided, we review the matter *de novo. Woods v. Cole*, 181 Ill. 2d 512, 516, 693 N.E.2d 333, 335 (1998).

As Justice Boyle so simply stated in his concurrence:

> "Letting a jury decide how an appellate court would answer a legal question *** is akin to letting a jury decide what a person in the courtroom is thinking. In both instances, a better way to find out would be to ask." *Charles Reinhart Co.*, 444 Mich. at 610, 513 N.W.2d at 787.

Now that we have concluded that the trial court correctly decided the issue as a matter of law, we must turn to the actual appellate issue before the trial court on summary judgment. Defendants' argument that ECS could not prove ultimate success on the merits is premised upon the fact that the appellate court so infrequently reverses PCB decisions. We find this argument wholly unpersuasive. However, since we are addressing the issue *de novo*, and since we are not certain as to what formed the basis for the trial court's decision, we will determine whether the law supports the trial court's ruling on other grounds.

The issue is whether section 39.2 of the Environmental Protection Act (Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(b)) requires notification to all landowners located within 250 feet of the boundaries of the RPCF itself or within 250 feet from the lot upon which the RPCF is located. The PCB concluded that the lot line means the greater area, and not simply the RPCF contained within that lot. Given that definition, the PCB found that the Madison County Board lacked jurisdiction because two landowners did not receive notice. On appeal to the trial court, the court affirmed the PCB decision.

The standard of review in an appeal from a PCB decision is limited. *Ogle County Board v. Pollution Control Board*, 272 Ill. App. 3d 184, 191, 649 N.E.2d 545, 551 (1995). Courts should defer to agencies charged with interpreting its own statutes. *Ogle County Board*, 272 Ill. App. 3d at 191, 649 N.E.2d at 551. A reviewing court will not reverse the agency's decision on disputed evidentiary issues unless that decision is contrary to the manifest weight of the evidence. *Waste Management of Illinois, Inc. v. Pollution Control Board*, 187 Ill. App. 3d 79, 81, 543 N.E.2d 505, 507 (1989).

ECS contends that the statute requires notification only to those landowners living in that 250-foot proximity to the RPCF. Tak-

ing ECS's argument to an extreme situation, no landowner would need to be notified if the parcel of land was sufficiently large and the RPCF was located in the middle of that parcel.

The language of the statute requires notification of owners of land within 250 feet of the *lot line*. Ill. Rev. Stat. 1989, ch. 111½, par. 1039.2(b). The record reflects that the lot lines at issue are detailed on the authentic tax records and assessor's map. The lines on the map and tax records coincide with parcel five. The parcel is not further divided. The RPCF is located within a section of parcel five.

Statutes should be given their plain and ordinary meaning. *R.P. Lumber Co. v. Office of the State Fire Marshal*, 293 Ill. App. 3d 402, 406, 688 N.E.2d 379, 383 (1997). As the PCB stated in its decision, the statute calls for notification to owners of land within 250 feet of the lot line—"not 250 feet from some other point within the lot lines." We conclude that *lot line* refers to the greater parcel line, and not simply the RPCF line. To conclude otherwise could result in abuse, with property owners in close proximity to a proposed RPCF not receiving notification because the applicant owns enough land surrounding the proposed RPCF to negate the 250-foot rule.

Given our interpretation of this statute, which would result in the affirmance of the PCB decision, the trial court's decision affirming the PCB was not erroneous as a matter of law. On this one issue, plaintiffs would have been unsuccessful on appeal.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.

MAAG and HOPKINS, JJ., concur.