Jo Ann CAMPBELL, a/k/a Jody Campbell, Plaintiff–Appellant,

v.

CITY OF CHAMPAIGN, Steven C. Carter, and Richard A. Schnuer, Defendants–Appellees.

No. 90–3004.

United States Court of Appeals, Seventh Circuit.

Argued July 9, 1991.

Decided Aug. 23, 1991.

J. Steven Beckett (argued), Beckett & Crewell, Champaign, Ill., for plaintiff-appellant.

Michael R. Cornyn (argued), Thomas, Mamer & Haughey, Champaign, Ill., for defendants-appellees.

Before CUMMINGS, POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

The plaintiff was hired by the City of Champaign to be the City's Records Manager (equivalent to City Clerk), pursuant to an ordinance which provides that the Records Manager "shall serve at the pleasure of the City Manager." She was fired—for rudeness to fellow employees—and brought this suit under 42 U.S.C. § 1983, claiming that she had a Fourteenth Amendment property interest in her job and therefore could not be fired unless accorded due process of law, which she claims she was

not. The district judge granted summary judgment for the City and the other defendants.

How could the plaintiff have a property interest in her job when she served "at the pleasure of the City Manager"? That is the language of at-will employment, and how could an at-will employee be thought to have the sort of secure and dependable interest fairly describable as an entitlement and therefore as "property"? *Reed v. Village of Shorewood*, 704 F.2d 943, 948 (7th Cir.1983). Well, he (or she) cannot, of course. *Simpkins v. Sandwich Community Hospital*, 854 F.2d 215, 218 (7th Cir. 1988); see also *Corcoran v. Chicago Park District*, 875 F.2d 609, 612 (7th Cir.1989); *Lee v. County of Cook*, 862 F.2d 139 (7th Cir.1988). But upon the commencement of her employment the plaintiff was handed a booklet entitled "Personnel Policies—Non–Bargaining Unit Employees," and she claims that this employment handbook made her an employee terminable only for cause and thereby conferred on her a property right in her continued employment so long as she did not give cause for being terminated.

This is not the first attempt to tack *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), which holds that under the common law of Illinois an employee handbook can create an employment contract, to *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), which holds that a tenure employment contract creates property within the meaning of the due process clause of the Fourteenth Amendment. The attempt fails here, as it did in *Simpkins, Corcoran,* and *Lee,* and does so for two reasons. This particular employee handbook does not create a contract; and not every employment contract creates a property right.

■ 1. The idea behind *Duldulao* is that if an employee handbook contains a promise on which a reasonable employee would rely, the employee's action in taking up or continuing the employment after receiving the handbook is the acceptance of a unilateral offer and makes a legally en-

forceable contract. There is a lot that is questionable in this reasoning, *Enis v. Continental Illinois Nat'l Bank & Trust Co.*, 795 F.2d 39, 41–42 (7th Cir.1986), but that is not our business now that the Supreme Court of Illinois has spoken; for it is a question of Illinois law. The question for us is whether the employee manual of the City of Champaign could fairly be interpreted as promising the plaintiff that her job was secure as long as she didn't misbehave. It could not. The ordinance under which she was hired made clear that she served at the pleasure of the City Manager—that is, that she had no tenure, no job security. A reasonable person in the plaintiff's position would not have assumed that the ordinance could be overridden by a mimeographed handout addressed to *all* nonunion employees of the City. Moreover, the handbook contains no promissory language. This is not to make a fetish of particular words, but to remark the absence of any words even remotely indicative of an intention to confer legally enforceable rights.

The plaintiff asks us to infer such an intention from the fact that the handbook lists various grounds for dismissal or discharge and contains no catch-all that would make clear that she could also be terminated for no ground at all. This misunderstands the purpose of the handbook. It is not to confer rights but to warn employees about conduct or circumstances that will result in termination or other adverse personnel action. The handbook distinguishes between two types of termination—"dismissal" and "discharge," the former being nondisciplinary, the latter disciplinary. The former includes for example the elimination of the employee's position. With respect to disciplinary terminations the handbook states that "the City agrees with the concept of progressive disciplinary action"—that is, with the principle that you don't discharge an employee until lesser sanctions ranging from an oral reprimand to demotion have failed to rectify his misbehavior—but makes clear that the City can jump the queue as it were and discharge an employee without previous disci-

pline if the infraction is particularly serious or has been committed repeatedly.

The City's commitment to "progressive disciplinary action" is too loose and vague to confer a legally enforceable right to such progressivity. Nor is that the focus of the plaintiff's argument, which is rather that since the handbook contains a finite list of grounds for termination (either by way of dismissal or by way of discharge), it contractually entitles her to continued employment provided none of those grounds is established. But if the handbook had meant to do this it would not we think have left the matter to be inferred from silence.

In essence the plaintiff is claiming that if a handbook doesn't expressly disclaim contractual obligation it creates such an obligation, so that if the City of Champaign wanted to reserve the right to fire employees on grounds not stated in the handbook—or on no grounds—it had to say so, had to add a provision stating in substance that, "by the way, don't think that if we fire you on a ground not stated in the handbook you have a right to sue us." Such a disclaimer might be prudent but it is not a sine qua non for avoiding liability.

2. Even if the plaintiff had a good claim for breach of contract against the City, it would not follow that she had a constitutional claim for a deprivation of property. Not every contract right is property. *Lim v. Central DuPage Hospital,* 871 F.2d 644, 648 (7th Cir.1989); *Fontano v. City of Chicago,* 820 F.2d 213 (7th Cir. 1987) (per curiam); *Brown v. Brienen,* 722 F.2d 360, 363–65 (7th Cir.1983). Prisoner-rights cases such as *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), show that a contract which merely creates a right to specified procedures does not create an entitlement upon which a claim of deprivation of property without due process of law can be founded. See also *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir.1988) (en banc); *Doe v. Milwaukee County,* 903 F.2d 499, 503 (7th Cir.1990). To bring the case within the orbit of the property concept there must be a substantive entitlement. When the claimed deprivation of property is the loss of a job, the entitlement must be to a job, rather than just to a set of disciplinary procedures. "[A] contract that creates merely a right to procedure does not create a property right within the meaning of the due process clause." *Lim v. Central DuPage Hospital, supra,* 871 F.2d at 648. So even if the contract in this case be construed as *entitling* the plaintiff to progressive discipline, the breach would not be a deprivation of *property.* We have already explained why we do not construe the contract to have entitled the plaintiff to keep her job unless specified grounds for dismissal or discharge were established.

The judgment for the defendants is

AFFIRMED.