JACK B. TOOMBS, Plaintiff-Appellant, v. THE CITY OF CHAMPAIGN, Defendant-Appellee.

Fourth District   No. 4—92—1012

Argued May 19, 1993.—Opinion filed June 3, 1993.

Glenn A. Stanko (argued), of Reno, O'Byrne & Kepley, P.C., of Champaign, for appellant.

Michael R. Cornyn (argued), of Thomas, Mamer & Haughey, of Champaign, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff, Jack B. Toombs, the former director of operations for the Champaign Department of Public Works (Department), sued defendant, the City of Champaign (City), for wrongful discharge. His complaint alleged that an employee manual granted him a right, pursuant to *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482, 505 N.E.2d 314, to be fired only for certain specified reasons, and that the City did not fire him for any of those reasons. Defendant filed motions to dismiss under sections 2—615 and 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1991, ch. 110, pars. 2—615, 2—619). The trial court granted both motions, and plaintiff appeals.

We affirm.

## I. Background

In October 1980, the City hired plaintiff as the superintendent of operations for the Department. In April 1987, the City changed plaintiff's job title to "Director of Operations for the Department of Public Works," but his responsibilities remained the same. He supervised all employees in the operations division of the Department. Among other duties, the Department repaired and maintained city streets, cared for trees along the streets and on city-owned property, provided emergency-repair services to public equipment, and provided snow and ice removal.

In January 1981—four months after plaintiff started working for the City—the city council adopted an employee manual entitled *"Personnel Policies for Non-Bargaining Unit Employees"* (the manual).

As explained in the manual's statement of purpose, the City wanted to "standardize and formalize, for the benefit of the City and its employees, the benefits and conditions of employment for those employees of the City who are not represented by any of the City's designated bargaining units." The City thus published the manual "to recognize, by providing slightly different benefits in certain instances, the additional responsibility and differing characteristics of managerial employees." The City issued the manual to all its non-bargaining-unit employees, which included plaintiff. In his complaint, plaintiff alleged that he had read and relied upon the manual and its contents.

In October 1990, plaintiff received a letter from Jim Carney, the public works director and plaintiff's supervisor, stating that Carney recommended that the city manager fire plaintiff because of plaintiff's failure to adequately supervise and discipline his employees. In November 1990, plaintiff received a letter from Steven Carter, the city manager, informing plaintiff that he was fired. In March 1991, plaintiff filed this lawsuit for wrongful discharge.

In June 1991, defendant filed a motion to dismiss under section 2—615 of the Code, claiming that the manual did not create a contract. Defendant also filed a motion to dismiss under section 2—619 of the Code. Defendant attached a city council ordinance, which amended the Champaign Municipal Code (Municipal Code) by revising and codifying the structure of the Champaign city government. Section 2—362 of the Municipal Code created plaintiff's position, and section 2—363 stated that "[t]he Director of Operations shall be appointed by and serve at the pleasure of the City manager." (City of Champaign, Ill., Municipal Code ch. 2, §§2—362, 2—363 (1987).) Defendant thus argued that this amendment to the Municipal Code modified any *Duldulao* contract that the 1981 manual might have created. Plaintiff responded by submitting an affidavit stating that "[d]uring the course of his employment with the defendant, plaintiff was never advised in any fashion, including orally or in writing, that the City *** had passed an amendment to the Champaign Municipal Code providing that his position *** would 'be appointed by and serve at the pleasure of the City Manager.' "

In December 1992, the trial court granted the section 2—615 motion because the manual did not create a contract and granted the section 2—619 motion because the 1987 amendment negated any contractual right that might have existed under the 1981 manual. Plaintiff appeals both rulings.

## II. ANALYSIS

### A. *Standard of Review*

When ruling on a motion to dismiss under either section 2—615 or section 2—619 of the Code, the trial court must interpret all pleadings and supporting documents in the light most favorable to the non-moving party. The court should grant the motion only if plaintiff can prove no set of facts that would support a cause of action. (*Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 542, 582 N.E.2d 108, 111.) Because this process does not require the court to weigh facts or determine credibility, appellate courts do not give a trial court's judgment deference, but instead review the matter *de novo*. See *Weil, Freiburg & Thomas v. Sara Lee Corp.* (1991), 218 Ill. App. 3d 383, 389, 577 N.E.2d 1344, 1349.

### B. *The Duldulao Contract*

■ In *Duldulao*, the Illinois Supreme Court held that when an employer makes a clear policy statement to its employees in a written policy statement, an enforceable contract right may arise between the employer and its employees. (*Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.) The court set forth the following elements a plaintiff must prove to establish such a contract:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement." *Duldulao*, 115 Ill. 2d at 490, 505 N.E.2d at 318.

The present case primarily focuses on the first element—the clear promise. Plaintiff claims that the manual listed the only reasons for which the City could fire him. Defendant responds, first, that the manual contains no such clear promise, and, alternatively, that it modified the manual to clarify that plaintiff worked at the whim of the city manager. We need not address this latter response because we agree with the City that the manual contains no "clear promise" as required by *Duldulao*.

The manual explained that the "types of termination" that could end an employee's job *"includes [sic]"* resignation, dismissal, discharge, retirement, and death. (Emphasis added.) From this list, only

discharge and dismissal apply, and the City does not dispute that it did not "discharge" plaintiff under the definition of that term in the manual. Regarding "dismissal," the manual read as follows:

"Dismissal of an employee *may* result because of:

a. Conclusion or termination of the employee's layoff status

b. Termination or unsatisfactory completion of the employee's probationary period

c. Termination or elimination of the employee's position (unless the employee is eligible and elects to go on layoff status)

d. *The employee's unsatisfactory job performance*

e. The employee's failure to report or return to work" (Emphasis added.)

▉ We hold that this manual did not contain a clear promise. At two crucial places, the manual uses terms that indicate that the lists of the types of termination and dismissal were not exhaustive. In particular, using the term "includes" when introducing the list of the types of termination indicates that other types of termination might exist. Further, the manual also clearly stated that the employee "may" be dismissed for certain enumerated reasons, which similarly does not specifically preclude dismissal for any number of other reasons. Because no clear promise existed, no *Duldulao* contract arose granting plaintiff a purported right to be fired only for the listed reasons.

In support of this holding, we note that the United States Court of Appeals for the Seventh Circuit recently considered the same manual in *Campbell v. City of Champaign* (7th Cir. 1991), 940 F.2d 1111, which involved the same issue now before us. The court wrote the following:

"The idea behind *Duldulao* is that if an employee handbook contains a promise on which a reasonable employee would rely, the employee's action in taking up or continuing the employment after receiving the handbook is the acceptance of a unilateral offer and makes a legally enforceable contract. *** The question for us is whether the employee manual of the City of Champaign could fairly be interpreted as promising the plaintiff that her job was secure as long as she didn't misbehave. It could not. ***

The plaintiff asks us to infer such an intention from the fact that the handbook lists various grounds for dismissal or discharge and contains no catch-all that would make clear that she could also be terminated for no ground at all. This misunderstands the purpose of the handbook. *It is not to confer rights*

*but to warn employees about conduct or circumstances that will result in termination or other adverse personnel action.*
\*\*\*

The City's commitment to 'progressive disciplinary action' is too loose and vague to confer a legally enforceable right to ['progressive discipline']. Nor is that the focus of the plaintiff's argument, which is rather that since the handbook contains a finite list of grounds for termination (either by way of dismissal or by way of discharge), it contractually entitles her to continued employment provided none of those grounds is established. But if the handbook had meant to do this it would not we think have left the matter to be inferred from silence.

In essence the plaintiff is claiming that if a handbook doesn't expressly disclaim contractual obligation it creates such an obligation, so that if the City of Champaign wanted to reserve the right to fire employees on grounds not stated in the handbook—or on no grounds—it had to say so, had to add a provision stating in substance that, 'by the way, don't think that if we fire you on a ground not stated in the handbook you have a right to sue us.' Such a disclaimer might be prudent but it is not a *sine qua non* for avoiding liability." (Emphasis added.) *Campbell*, 940 F.2d at 1112-13.

We find the above analysis well reasoned and adopt it as part of our holding in this case.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.