Glen O. JONES, Plaintiff,

v.

SABIS EDUCATIONAL SYSTEMS, INC., International School of Minnesota, Inc.; Sabis International School; Chicago International Charter School; Chicago Charter School Foundation, Inc.; James Murphy; Karla Liffmann Livney; Leila C. Saad; Ralph Bistany; Al Bistany; Udo Schulz; Nadia Reda; Fern Bistany; Joy N'Dauo; Jim Bowden; and Sam Reddick, Defendants.

No. 98 C 4252.

United States District Court, N.D. Illinois, Eastern Division.

June 1, 1999.

870

William Gerard Berg, Donald G. Peterson, French, Kezelis & Kominiarek, P.C., Chicago, IL, Terry Alan Fox, Chicago, IL, for Plaintiff.

Michael David Richman, Clifford J. Shapiro, Michael H. Cramer, Lisa Murray Madigan, Henry Pietrkowski, Sachnoff & Weaver, Ltd., Chicago, IL, Michael Dean Karpeles, Carrie M. Garcia, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Defendants.

*CORRECTED MEMORANDUM*
*OPINION AND ORDER*

GETTLEMAN, District Judge.

Plaintiff Glen O. Jones ("plaintiff") has filed a 13 count complaint against multiple defendants, alleging that he was wrongfully terminated from employment in violation of federal and Illinois law. The complaint (in a classic case of over-pleading) names 17 defendants: (1) SABIS Enterprises, Inc.; (2) International School of Minnesota, Inc.; (3) SABIS International School; (4) SABIS School Network; (5) Chicago International Charter School; (6) Chicago Charter School Foundation, Inc. ("the Foundation"); (7) James Murphy ("Murphy"); (8) Karla Livney ("Livney"); (9) Leila Saad ("Saad"); (10) Ralph Bistany; (11) Al Bistany; (12) Udo Schulz ("Schulz"); (13) Nadia Reda ("Reda"); (14) Fern Bistany; (15) Joy N'Dauo ("N'Dauo"); (16) Jim Bowden ("Bowden"); and (17) Sam Reddick ("Reddick").[1] The complaint alleges 13 causes of action: (1) Title VII (count V(A)); (2) 42 U.S.C. § 1981 (count V(B)); (3) 42 U.S.C. § 1985 (count V(C)); (4) 42 U.S.C. § 1986 (count V(D)); (5) 42 U.S.C. § 1983 (count V(E)); (6) failure to provide "COBRA" notice (count V(F)); (7) slander (count VI(A)); (8) false light (count VI(B)); (9) tortious interference with contract (count VI(C)); (10) tortious interference with prospective business advantage (count VI(D)); (11) breach of employment contract (count VI(E)); (12) wrongful discharge (count VI(F)); and (13) wage collection (count VI(G)).

The International School of Minnesota, Inc., SABIS Educational Systems, Inc., SABIS International Charter School, and the Chicago International Charter School (collectively, "SABIS") have moved to dismiss counts V(B), V(C), V(E), VI(C) and VI(E). Al Bistany, Schulz, Reda, Fern Bistany, N'Dauo, Bowden and Reddick (the "individual SABIS defendants") have moved to dismiss counts V(B), V(C), V(E), VI(C), VI(D), VI(E) and VI(F). The Foundation has moved to dismiss counts V(A), V(B), V(C), V(E), V(F), VI(C), VI(E) and VI(F). Murphy and Livney (the "individual Foundation defendants") have moved to dismiss counts V(B), V(C), V(E), VI(C), VI(E) and VI(F). All the motions described above are filed under Rule 12(b)(6). Reddick and Schulz have moved to dismiss all counts under Rule 12(b)(2) for lack of personal jurisdiction.

As discussed below, SABIS's motion is granted in part and denied in part, the individual SABIS defendants' motion is granted, the Foundation's motion is granted, the individual Foundation defendants' motion is granted in part and denied in part, and Reddick and Schulz's motion is granted in part and denied in part as moot.

## FACTS

According to the complaint and attached exhibits, the Foundation entered into an agreement with the Chicago Reform Board of Trustees in 1997 to open two charter schools in Chicago—the North Campus and South Campus.[2] The Foundation then entered into an agreement with SABIS for SABIS to provide education programs and otherwise operate the schools. Both agreements specified that all instructional providers and other employees of the schools would be employees of SABIS, and not the Foundation. The campuses operated under the name Chicago International Charter School (the "School").

Defendant Ralph Bistany, SABIS's Director General, hired plaintiff as principal/director of the School's South Campus. This position entailed hiring administrative and teaching staff, procuring basic materials for the School's operation, and increasing enrollment through meetings with parents of prospective students and advertising through the local media.

1. Defendants Saad and Ralph Bistany have been dismissed without prejudice for lack of service of process.

2. A charter school is a "public, nonsectarian, nonreligious, non-home based, and non-profit school." 105 ILCS 5/27A–5.

Plaintiff was formerly a school administrator in Georgia.

The South Campus opened in August 1997 for the 1997–98 academic year. Profits for the first year exceeded SABIS's expectations. To reward plaintiff for his performance, Ralph Bistany gave him a $5,000 bonus and informed him that additional bonuses would be forthcoming should his performance and the School's enrollment continue to grow.

The relationship between plaintiff and SABIS deteriorated, however, when plaintiff began objecting to a number of Ralph Bistany's hiring and administrative decisions. First, after the Chicago Public School had rejected the School's disciplinary code, concluding that it was illegal under the Individuals with Disabilities in Education Act, ("IDEA"), 20 U.S.C. § 1400, et. seq., Ralph Bistany nevertheless insisted that the School implement the code. Bistany informed plaintiff that SABIS did not want to become a "school for the disabled." Plaintiff objected to this course of action, arguing that it violated the rights of disabled students.

Next, after plaintiff offered a kindergarten teacher position to an African American male, Ralph Bistany forced plaintiff to refrain from hiring him. Bistany explained to plaintiff that "it is not the SABIS way" to hire male teachers for lower school positions because they are prone to sexually molest their own students. Despite plaintiff's objection, Bistany insisted that the male not be hired. Ralph Bistany also forced plaintiff, over plaintiff's objection, to refrain from hiring a male for a first grade teaching position (for identical reasons).

Then, after plaintiff had hired an African American female as a Spanish teacher, Ralph Bistany criticized plaintiff for his choice. Bistany informed plaintiff that it is the "SABIS way to hire only native speakers to teach foreign languages." Subsequently, over ·plaintiff's objection, Ralph Bistany, N'Dauo and Reda pressured plaintiff into terminating the teacher.

Finally, in December 1997 and February 1998, plaintiff made numerous objections to Ralph Bistany and N'Dauo that the School's education of disabled students violated the IDEA. In response, Ralph Bistany told plaintiff to go along with "the SABIS way," and threatened to terminate plaintiff if he did not cease his objections.

On February 5, 1998, at Ralph Bistany's direction, plaintiff took a personal leave of absence from the School. On February 6, N'Dauo called plaintiff and advised him not to retain legal counsel or "go around blabbing" his objections to employment decisions. Plaintiff informed N'Dauo that he had already contacted legal counsel, that he was preparing a letter outlining his objections, and that three of his subordinates were preparing a memorandum (the "memo") raising objections to SABIS's employment practices. On February 9, plaintiff transmitted the letter and memo to SABIS (addressed to Ralph Bistany), objecting to SABIS's race and gender-based employment decisions and education of disabled students. When Ralph Bistany learned of the letter and memo, he instructed Reddick, SABIS's General Counsel, to travel to Chicago and fire plaintiff for objecting in writing to SABIS's discriminatory hiring practices. In cooperation with Bistany, Livney, the Foundation's Executive Director, came to the School and advised SABIS and the Foundation on how to terminate plaintiff and what to tell staff, parents, and the Chicago Public Schools. Livney also assisted in interrogating two of the memo's three authors. On February 10, Reddick met with plaintiff at the School and terminated him.

Thereafter, several defendants allegedly took actions to cover up SABIS's true motivations for terminating plaintiff and to prevent others from making written objections to SABIS's employment practices. First, on the day of plaintiff's termination, one of the memo's authors was put on administrative leave. Second, Livney, Murphy, Reda, N'Dauo and Ralph Bistany

intimidated another of the memo's authors for making written objections. Third, SA-BIS, the Foundation and Livney conducted a "sham" audit of the South Campus to create support and justification for their retaliatory actions against plaintiff. Finally, to avoid informing the parents of the real reason for plaintiff's termination, N'Dauo and Al Bistany suggested to parents of the students that plaintiff had embezzled money from the School.

## DISCUSSION

## I. STANDARDS FOR A MOTION TO DISMISS

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the plaintiff's allegations entitle him to relief. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429–30 (7th Cir.1996). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). For purposes of a motion to dismiss, the court accepts the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. *See Travel All Over the World*, 73 F.3d at 1428.

## II. SECTION 1981

All defendants move to dismiss count V(B), which alleges that SABIS, the Foundation, and the individual SABIS and Foundation defendants violated plaintiff's rights under 42 U.S.C. § 1981 to "make and enforce contracts," by terminating plaintiff's employment contract because of his objections to SABIS's race-based hiring decisions.

## A. SABIS

SABIS argues that the court should dismiss plaintiff's § 1981 claim against it for two reasons: (1) there was no "contract" between SABIS and plaintiff, and (2) plaintiff lacks standing.

## 1. Contractual Relationship

Section 1981 governs contractual relationships, guaranteeing to all persons in the United States "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). To assert a § 1981 claim, "there must at least be a contract." *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1034 (7th Cir.1998). SABIS argues that plaintiff was an at will employee, and therefore, did not have a "contract" under § 1981. In response, plaintiff contends that a provision in SABIS's teaching staff handbook limits his at will status. Alternatively, plaintiff argues, even if his employment was at will, he nevertheless has a protected "contract" for purposes of § 1981. To resolve these arguments, the court must determine if plaintiff's employment was at will and, if so, whether an at will employee may state a claim under § 1981.

### a. *Plaintiff's At Will Status*

The employment at will doctrine allows an employer "to discharge an employee at will for any reasons or for no reasons, except when the discharge violates clearly mandated public policy." *Talley v. Washington Inventory Service*, 37 F.3d 310, 311 (7th Cir.1994). In Illinois, there is a presumption that employment without a fixed term is employment at will. *See Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314, 318 (Ill.1987). An employee handbook or other policy statement may serve to rebut this presumption only if it creates enforceable contractual rights. *See id.* at 318. Under *Duldulao*, a handbook or policy statement must satisfy

three conditions in order to create an enforceable contract:

> First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement. *Id.*

■ The first prong of the *Duldulao* test requires an examination of the handbook itself. SABIS's handbook contains three sections that are relevant for deciding whether it creates a sufficiently clear contract offer. The first page of the Handbook, entitled "Introduction," provides:

> This Employee Handbook is intended as a guide to introduce SABIS teachers to the policies, rules and regulations under which the school operates. It is not intended to be a contract or a promise of employment or of specific terms, benefits, or duration of employment . . .
>
> Employment at The School is "at will," and the Employee Handbook and Policies and Procedures Manual does not create a contract or promise of employment or of any specific terms of employment.

The second relevant section, entitled "Termination," states:

> Employment at The School is "at-will" and this Employee Handbook and the Policies and Procedures Manual are not intended to and do not create a contract or promise of employment or of any specific terms, benefits, or duration of employment. A teacher can be terminated at any time, without notice, and for any reason.

Finally, the "Employee Social Responsibility Act" section, on which plaintiff relies to argue that the handbook creates an enforceable contract, provides:

> An employer may not discharge, discipline, threaten, discriminate against, or penalize an employee regarding the employee's compensation, conditions, or privileges of employment because:
>
> The employee, in good faith, reports a violation or suspected violation of any state or federal law to any governmental body;
>
> The employee is requested by a public body to participate in an investigation, hearing, or inquiry; or
>
> The employee refuses an employer's order to perform an action the employee has an objective basis in fact to believe violates any state or federal law, and the employee informs the employer that the order is being refused for that reason.

Reading the handbook as a "coherent whole," *Border v. City of Crystal Lake*, 75 F.3d 270, 274 (7th Cir.1996), the court concludes that it fails the first prong of the *Duldulao* test, which requires the language to contain a sufficiently clear contract offer. The disclaimer language both at the beginning of the handbook and repeated in the "Termination" section is clear: the handbook "is not intended to be a contract or a promise of employment or of specific terms, benefits, or duration of employment." Plaintiff could not reasonably have believed by reading the handbook that it had made an employment contract offer. *See Border*, 75 F.3d at 273 ("Illinois courts have recognized . . . that a disclaimer within an employee handbook can be sufficient to show that no 'clear promise' of continuing employment was made, and thus that [a] handbook [does] not create a legitimate claim of entitlement to employment").

The "Employee Social Responsibility Act" section does not alter this conclusion. A primary principle of the *Duldulao* test is that a handbook creates contract rights only when "specific procedures have been prescribed by positive and mandatory language." *Saint Peters v. Shell Oil Co.*, 77 F.3d 184, 187 (7th Cir.1996). The Act does not speak in terms of employee rights, but

rather, of employer duties. That is, while it imposes a duty on employers not to retaliate against employees for certain specified reasons, it does not grant continuing employment rights to employees. Moreover, and most significantly, the disclaimer language clarifies that the handbook is merely a guide, as opposed to a contractual obligation. Accordingly, the court concludes that plaintiff's employment relationship with SABIS was at will.

### b. At will Contracts Under § 1981

Since plaintiff was an at will employee, the court must decide whether employment at will relationships are protected "contracts" under § 1981. SABIS argues that recent Seventh Circuit dicta in *Gonzalez*, 133 F.3d at 1035, as well as district court holdings in other circuits, suggest that they are not. In *Gonzalez*, the plaintiff was an at will employee and alleged discrimination under Title VII and § 1981. *See id.* at 1027. While the court affirmed summary judgment against the plaintiff because she "provided no direct evidence of discrimination and could not point to a similarly situated employee in an unprotected class who was more favorably treated," *id.* at 1035, the court suggested (without deciding) that employees at will lack contractual relationships for purposes of § 1981:

> Arguably, since Gonzalez was an employee at-will, and did not have any contractual rights regarding the term of her employment, she cannot claim that she was discriminated against with respect to Ingersoll's layoff. *Id.* at 1035.

In reaching this determination, the court relied on district court cases in other circuits that had dismissed § 1981 claims brought by at will employees, finding no underlying contractual relationship. *Id.* at 1035 (citing *Moorer v. Grumman Aerospace Corp.*, 964 F.Supp. 665 (E.D.N.Y. 1997), *Moscowitz v. Brown*, 850 F.Supp. 1185 (S.D.N.Y.1994), *Askew v. May Merchandising Corp.*, 1991 WL 24390, 1991 U.S.Dist. LEXIS 1919 (S.D.N.Y.1991)).

Since *Gonzalez*, however, the Fourth and Fifth Circuits have squarely resolved this issue, each holding that at will employment relationships are contractual for purposes of § 1981. *See Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir.1999) ("Having concluded that an at-will employment relationship is contractual, we hold that such relationships may therefore serve as predicate contracts for § 1981 claims"); *Fadeyi v. Planned Parenthood Assoc. of Lubbock, Inc.*, 160 F.3d 1048, 1049, 1998 U.S.App. LEXIS 28351, *5 (5th Cir., Nov. 11, 1998) ("We conclude that the better view is that, irrespective of being subject to at-will termination, such an employee stands in a contractual relationship with his employer, and may maintain a cause of action under § 1981"). The courts reasoned that, even though at will employees have no contractual rights to specific terms of employment, they nevertheless have contracts. *See Fadeyi*, 160 F.3d at 1049–50, 1998 U.S.App. LEXIS 28351, at *4–5 (noting that under Texas law, "an at-will employment relationship is a contract, notwithstanding that either party may terminate it at will"); *Spriggs*, 165 F.3d at 1018, 1999 WL 34938, at *3 (noting that under Maryland law, "at-will employment is a contract of indefinite duration that may be terminated at the pleasure of either party at any time") (citation omitted). Therefore, "an employer may act in perfect accord with its contractual rights—for example, when it terminates an at-will employee—but it may still violate § 1981 if that action is racially discriminatory and affects one of the contractual aspects listed in § 1981(b)." *Spriggs*, 165 F.3d at 1020, 1999 WL 34938, at *5.

In light of *Spriggs* and *Fadeyi*, the court concludes that plaintiff's at will employment relationship with SABIS is contractual for purposes of § 1981. While plaintiff lacked a contractual right to a specific duration of employment, he nevertheless had a "contract," and SABIS may violate plaintiff's § 1981 right to enforce his at will contract if its action towards

plaintiff was discriminatory and "affects one of the contractual aspects listed in § 1981(b)." *Spriggs,* 165 F.3d at 1020, 1999 WL 34938, at *5. Moreover, notwithstanding the Seventh Circuit's dicta in *Gonzalez,* this conclusion is consistent with the Seventh Circuit's concept of employment at will as a contractual relationship:

> "Employment at will is not a state of nature but a continuing contractual relation ... All that is missing is a provision that gives the contract a fixed term ... A contract for employment at will may end abruptly but it is a real and continuing contract nonetheless...."
> [*McKnight v. General Motors Corp.,* 908 F.2d 104, 108 (7th Cir.1990) ].

Accordingly, the court concludes that plaintiff may maintain a § 1981 action regardless of his at will employment status.

## 2. Standing

SABIS also challenges plaintiff's standing to bring a § 1981 claim. SABIS correctly notes that the complaint alleges that SABIS's motivation to fire plaintiff was not his membership in a protected class, but rather his objections to discrimination against other class members. According to SABIS, only those who are discharged because of their class membership have standing under § 1981.

The Seventh Circuit has not specifically addressed this issue. However, other circuits hold that a person (even a white person) may state a claim under § 1981 if: (1) she was retaliated against for advocating the rights of, or associating with, minorities; and (2) she was the "direct target of defendant's discriminatory action." *Benjamin v. Aroostook Medical Ctr., Inc.,* 57 F.3d 101, 105 (1st Cir.1995); *see Albert v. Carovano,* 851 F.2d 561, 572–73 (2d Cir.1988); *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1447 (10th Cir.1988); *Alizadeh v. Safeway Stores, Inc.,* 802 F.2d 111, 114 (5th Cir.1986); *Parr v. Woodmen of the World Life Ins. Co.,* 791 F.2d 888, 890 (11th Cir.1986); *Fiedler v. Marumsco Christian School,* 631 F.2d 1144, 1150 (4th Cir.1980); *Winston v. Lear–Siegler, Inc.,* 558 F.2d 1266, 1268–70 (6th Cir.1977).

■ The court concludes that the allegations in the complaint are sufficient to establish plaintiff's standing. The complaint alleges that plaintiff was retaliated against for advocating the rights of minorities. It also alleges that "[d]efendants would not have altered the terms and conditions of Plaintiff's employment but for his actions in objecting to employment decisions made on the basis of race." This statement alleges a direct link between plaintiff's objections to discrimination and his discharge, thereby rendering plaintiff the "direct target of defendant's discriminatory action." *Benjamin,* 57 F.3d at 105.

Because plaintiff had a "contract" and has standing, SABIS's motion to dismiss plaintiff's § 1981 claim is denied.

## B. The Foundation

Count V(B) also names the Foundation as a defendant. As noted, the Foundation is an authorized charter school under the Illinois Charter School Law, 105 ILCS 5/27A–1 et seq. The statute describes a charter school as "a public, nonsectarian, nonreligious, non-home based, and non-profit school." 105 ILCS 5/27A–5.

■ As a public school, the Foundation is a governmental body. *See Bridgman v. New Trier High School District No. 203,* 128 F.3d 1146, 1150 (7th Cir. 1997). "[R]ecovery against a governmental body under section 1981 may not be based on respondeat superior." *Smith v. Chicago School Reform Board of Trustees,* 165 F.3d 1142, 1148, 1999 U.S.App. LEXIS 776, *16 (7th Cir.1999). Rather, "[t]he plaintiff must show that the body's *official policy or custom* was discriminatory." *Id.* (emphasis added).

■ Because the complaint fails to allege that the Foundation's official policies or customs contributed to the violation of plaintiff's right to enforce his at will employment contract, plaintiff's § 1981 count against the Foundation is dismissed.

## C. Individual SABIS and Foundation Defendants

■ Count V(B) also names individual SABIS defendants Al Bistany, Fern Bistany, N'Dauo, Reddick, Schulz, Reda and Bowden, and individual Foundation defendants Livney and Murphy. To state a § 1981 claim against an individual, the plaintiff must allege that the individual was "personally involved in the acts of intentional discrimination of which the plaintiff complains." *Sullivan v. Prestronics, Inc.*, 1997 WL 327126, *2 (N.D.Ill.); *see Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir.1985) ("[P]ersonal liability cannot be imposed on a corporate official for the corporation's violation of section 1981 when that official is not alleged to have participated in the actual discrimination against the plaintiff").

■ Of these nine defendants, Reddick and Livney are the only ones that the complaint alleges were "personally involved" or "participated" in the actual discrimination against plaintiff; Reddick informed plaintiff that he was terminated; and Livney advised SABIS and the Foundation regarding how to terminate plaintiff and what to tell staff, parents, and schools. With regard to the other seven defendants, the complaint alleges only that they "joined in support" of plaintiff's termination. This language falls short of alleging personal involvement.

Accordingly, the individual defendants' motions to dismiss count V(B) are granted with respect to Al Bistany, Fern Bistany, N'Dauo, Schulz, Reda, Bowden and Murphy, and are denied with respect to Reddick and Livney.

## III. SECTION 1985

All defendants move to dismiss count V(C), which alleges that SABIS, the individual SABIS defendants, the Foundation, and the individual Foundation defendants conspired to retaliate against plaintiff for his attempts to remedy discriminatory practices at the school, in violation of 42 U.S.C. § 1985(3).

■ To assert a claim under § 1985(3)—in both private party and state action conspiracies—the plaintiff must allege that some "racial or perhaps otherwise class based discriminatory animus" motivated the conspirators' actions. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *see Kyle v. Morton High School, Dist. 201*, 144 F.3d 448, 457–58 (7th Cir.1998). Plaintiff is African American. However, the complaint does not allege that the conspirators' animus toward plaintiff's race motivated their decision to retaliate against him. Rather, the complaint alleges that the conspirators' actions toward plaintiff were motivated by their desires to thwart plaintiff's attempts to remedy SABIS's discriminatory practices.

Circuits are split as to whether a plaintiff who is retaliated against for some reason *other* than his membership in a protected class may state a claim under § 1985(3). The First Circuit answered this question in the negative:

> "The requirement that the discrimination be 'class-based' is not satisfied by an allegation that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs. Rather, the complaint must allege facts showing that the defendants conspired against plaintiffs *because of their membership in a class . . .* "

*Harrison v. Brooks*, 519 F.2d 1358, 1359 (1st Cir.1975) (emphasis added). In contrast, the Third Circuit has held that a plaintiff who is retaliated against because he criticized his employer's racially discriminatory employment practices may state a § 1985(3) claim. *See Richardson v. Miller*, 446 F.2d 1247, 1248 (3d Cir.1971).

■ While the Seventh Circuit expressly declined to decide this issue in *Murphy v. Mount Carmel High School*, 543 F.2d 1189, 1192 (7th Cir.1976), a 1992 Seventh Circuit decision suggests that a plaintiff must be retaliated against *because of his membership in a class* in order to state a claim under § 1985(3). *See Hicks*

*v. RTC,* 970 F.2d 378 (7th Cir.1992). In *Hicks,* the plaintiff brought a § 1985(3) action against his former employer for terminating him because he urged its compliance with federal law. Specifically, the plaintiff alleged that he was terminated because he reported to the Federal Home Loan Bank Board that his employer violated the Federal Community Reinvestment Act by failing to invest in minority neighborhood projects and failing to market loans to minority groups. *See id.* at 380. The Seventh Circuit dismissed the § 1985(3) claim, holding that:

> [P]laintiff's status as a 'whistleblower' does not entitle him to civil rights protection under §§ 1985(3) and 1986. Whistleblowers cannot, by imaginative pleadings, qualify as a class afforded § 1985(3) protection, for they do not possess any of the characteristics—i.e. race, national origin or gender—which are traditionally part and parcel of discrete and insular minorities. *Id.* at 381.

Plaintiff in the instant case, like the plaintiff in *Hicks,* attempted to "blow the whistle" on SABIS's discriminatory practices, and the conspirators allegedly retaliated against him for doing so. Therefore, because (1) plaintiff was not discharged because of his race, and (2) whistleblowers do not constitute a protected class, plaintiff cannot state a claim under § 1985(3). Count V(C) is dismissed.[3]

## IV. SECTION 1983

SABIS, the Foundation, and all named individual SABIS and Foundation defendants move to dismiss count V(E), which alleges that SABIS and the Foundation, through their agents, violated 42 U.S.C. § 1983 by: (1) depriving plaintiff of "property" in violation of the 14th Amendment by refusing to afford him procedural due process before and after his termination; and (2) depriving plaintiff of his 14th Amendment "liberty of employment" inter-

est by intentionally damaging his reputation.

### A. SABIS

 Plaintiff attempts to hold SABIS liable under § 1983 for the acts of its agents. However, "just as a municipal corporation is not vicariously liable upon a theory of respondeat superior for the constitutional torts of its employees, a private corporation is not vicariously liable under § 1983 for its employees' deprivations of others' civil rights." *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir. 1982). Therefore, to hold SABIS liable for its employees' unconstitutional acts, plaintiff must allege that SABIS's official policy or custom was the "moving force of the constitutional violation." *Id.* (quoting *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (U.S.1978)).

 The complaint fails to allege that any "official policy or custom" of SABIS was the "moving force" behind its agents' deprivation of plaintiff's civil rights. *Id.* The complaint alleges that Ralph Bistany: (1) stated that "it is not the SABIS way" to hire male teachers for lower school positions; (2) stated that it is "the SABIS way to hire only native speakers to teach foreign language;" and (3) insisted that plaintiff implement the SABIS disciplinary code that was determined to be illegal under the IDEA. While Bistany's statements suggest that SABIS has certain hiring and student selection policies that may violate prospective teachers' and students' civil rights, nowhere in the complaint does plaintiff allege that a SABIS policy or custom contributed to its agents' decision to terminate plaintiff's employment without due process or to undermine his reputation because he complained about discrimination against others. To the contrary, the complaint

---

3. With regard to the Foundation, Count V(C) is dismissed for an alternative reason. Because the Foundation is a municipal actor, "the complaint must allege an official policy or custom which relates to matters stemming

from or resulting in the conspiracy." *Eiland v. Hardesty,* 564 F.Supp. 930, 934 (N.D.Ill. 1982). Since the complaint fails to allege any such policy, the claim is dismissed on this ground as well.

alleges that SABIS's official policy, as expressed in the handbook, is not to retaliate in any way against employees who report violations of federal or state laws. Count V(E) against SABIS is dismissed.

## B. The Foundation

As a municipal actor, the same "official policy or custom" requirement applicable to private corporations is applicable to the Foundation. *See Cornfield v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1324 (7th Cir.1993). Like the complaint's deficiency with respect to SABIS, the complaint fails to allege that the Foundation's "official policy or custom" motivated its agents to deprive plaintiff of his constitutional rights. Count V(E) against the Foundation is therefore dismissed.[4]

## C. Individual SABIS and Foundation Defendants

Count V(E) also alleges that defendants Al Bistany, Fern Bistany, N'Dauo, Reda, Schulz, Bowden, Reddick, Livney and Murphy are individually liable under § 1983. Because individuals are not shielded by the "official policy or custom" requirement applicable to SABIS and the Foundation, the court must decide whether the complaint adequately alleges that the individual defendants deprived plaintiff of any property or liberty interest.

### 1. Property Interest

■■■ The 14th Amendment prevents any state actor from depriving "any person of life, liberty, or property, without due process of law ..." In order to have a "property" interest that cannot be deprived without due process, the interest must be "fairly discernible as an entitlement." *Campbell v. City of Champaign*, 940 F.2d 1111, 1112 (7th Cir.1991). An at will employment relationship, although contractual, does not confer an entitlement. *See id.* Therefore, an at will em-

ployee does not have a protected "property" interest. *See id.* ("[H]ow could an at will employee be thought to have the sort of secure and dependable interest fairly describable as an entitlement and therefore as 'property'? ... Well, he (or she) cannot, of course") (citations omitted).

In the instant case, given plaintiff's at will status, he has no protected property interest in his employment. Consequently, the defendants were under no obligation to provide plaintiff due process in their actions toward him.

### 2. Liberty Interest

In essence, plaintiff alleges that the individual defendants defamed him by informing parents and school staff that plaintiff was terminated for embezzling money earmarked for the purchase of books. These statements, plaintiff alleges, undermined plaintiff's reputation with parents and staff, and therefore, violated his "liberty" interest.

■■■ Normally, a plaintiff's interest in his reputation is not deemed "liberty" or "property" within the protection of the due process clause. *See Olivieri v. Rodriguez*, 122 F.3d 406, 407 (7th Cir.1997). However, "when the character and circumstances of the defamation are such as to have 'foreclosed [plaintiff's] freedom to take advantage of other employment opportunities' [plaintiff] can bring a suit based on the deprivation of his liberty of employment or occupation." *Id.* (quoting *Paul v. Davis*, 424 U.S. 693, 710, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).

Here, plaintiff has failed to allege any facts suggesting that defendants' statements impaired his "freedom to take advantage of other employment activities." *Id.* Nothing in the complaint suggests that the harm to plaintiff's reputation impacted his ability to obtain other employment.

---

4. Even if plaintiff had adequately alleged that an official policy or custom of SABIS or the Foundation deprived plaintiff of his civil rights, plaintiff's § 1983 claim against SABIS and the Foundation would nevertheless fail because plaintiff has not adequately alleged a protected "property" or "liberty" interest. This is explained in Part IV(C) of this opinion, *infra*.

Therefore, while the statements may have damaged plaintiff's reputation with parents and staff, they do not infringe on plaintiff's liberty interests under the 14th Amendment.

Because the complaint fails adequately to allege that plaintiff had a protected liberty or property interest, plaintiff's § 1983 claim against the individual defendants is dismissed.

## V. TITLE VII

The Foundation moves to dismiss count V(A), which alleges that SABIS and the Foundation discriminated against plaintiff in violation of Title VII of the Civil Rights Act of 1964.

Title VII specifies that "it shall be an unlawful employment practice for an *employer*—(1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (emphasis added). The Act defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees...." 42 U.S.C. § 2000e(b).

The Foundation argues that plaintiff has not adequately alleged that the Foundation was plaintiff's "employer." A complaint must "state either direct or inferential allegations concerning all material elements necessary for recovery under the chosen legal theory." *Khoury v. Cook Assoc.*, 1995 WL 107159 (N.D.Ill. 1995). Thus, to recover under Title VII, plaintiff must allege that defendant falls within the statutory definition of "employer." *See Komorowski v. Townline Mini–Mart and Restaurant*, 162 F.3d 962 (7th Cir.1998).

■ The court can find no direct or inferential allegations concerning this element. While count V(A) alleges that SABIS is a Title VII employer, it does not make the same allegation with respect to the Foundation. Rather, the complaint alleges only that the Foundation was plaintiff's employer under a provision of the Illinois Charter School Law. Plaintiff's reliance on the Illinois Charter School Law to support its contention that the Foundation was plaintiff's "employer" under Title VII is misplaced. The provision on which plaintiff relies states that, "[a] person shall be deemed to be employed by a charter school *unless a collective bargaining agreement or the charter school contract otherwise provides.*" 105 ILCS 5/27A–10 (emphasis added). Here, the Foundation's charter school contract with the Chicago School Reform Board of Trustees provides that the Foundation is not plaintiff's employer:

> In clarification of the relationship between the instructional providers and [the Foundation], as designated in the Application, it is the intent of [the Foundation] that, unless separately stated in a written agreement executed by [the Foundation], no instructional provider or any other person working at [the Foundation] shall be deemed an employee of [Foundation].

Moreover, the "Charter School Management Agreement" between the Foundation and SABIS specifies that the School's employees are employees of SABIS and not the Foundation:

> All employees working at the Charter School, to the extent permitted by the Charter Agreement, the Charter School Laws and all other applicable federal and state laws and regulations, with the exception of the executive director of [the Foundation], will be employees of SABIS and not [the Foundation]. SABIS will inform each such employee that he or she is an employee of SABIS and that [the Foundation] has no obligation to him whatsoever.

These exhibits illustrate that SABIS was plaintiff's only employer, and that the Foundation's only employee is its executive director. Because the Foundation was not plaintiff's employer (and in any event, has less than 15 employees), the Foundation's motion to dismiss count V(A) is granted.

## VI. FAILURE TO PROVIDE "CO-BRA" NOTICE

The Foundation moves to dismiss count V(F), which alleges that the Foundation and SABIS failed to provide notice to plaintiff that he could continue health insurance following his termination, in violation of 29 U.S.C. § 1161. COBRA applies only to "employers" with 20 or more employees. Plaintiff has failed to allege that the Foundation is an "employer" under COBRA. Moreover, similar to plaintiff's Title VII claim, the exhibits attached to plaintiff's complaint refute any inference that the Foundation is plaintiff's employer. The court therefore dismisses count V(F) against the Foundation.

## VII. TORTIOUS INTERFERENCE WITH CONTRACT; BREACH OF CONTRACT

All defendants move to dismiss counts VI(C) and VI(E). Count VI(C) alleges that all individual defendants are liable for "tortious interference with contract" for causing SABIS and the Foundation to terminate plaintiff in breach of SABIS's employee handbook. Count VI(E) alleges that SABIS and the Foundation are liable for breach of contract for terminating plaintiff in violation of the handbook.

Because the court has found that the handbook did not constitute a contract, plaintiff's claims that defendants tortiously interfered with and breached the handbook are insufficient to state causes of action for tortious interference with contract and breach of contract. Accordingly, counts VI(C) and VI(E) are dismissed.

## VIII. TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

The individual SABIS defendants move to dismiss count VI(D), which alleges that individual defendants tortiously interfered with plaintiff's expectation that his employment relationship with SABIS and the Foundation would continue to strengthen due to his job performance.

To state a cause of action for tortious interference with prospective business advantage, a plaintiff must allege: (1) a reasonable expectation by the plaintiff of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate interest from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. See *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511, 154 Ill.Dec. 649, 568 N.E.2d 870 (Ill.1991). In the instant case, the dispute centers on the first requirement. The complaint alleges that plaintiff had a "valid expectation" of continued employment with SABIS and the Foundation, and that individual SABIS defendants tortiously interfered with this expectation. Defendants argue that the complaint does not adequately allege a reasonable expectation.

The complaint actually alleges two claims with respect to the movants: (1) the individual SABIS defendants interfered with plaintiff's employment expectations with *SABIS*; and (2) the individual SABIS defendants interfered with plaintiff's employment expectations with *the Foundation*. Regarding the first claim, plaintiff's position is essentially that SABIS tortiously interfered with its own business relationship with plaintiff. Because the tort "requires a showing of action by the defendant toward a third party," *Williams v. Weaver*, 145 Ill.App.3d 562, 570, 99 Ill.Dec. 412, 495 N.E.2d 1147 (1st Dist.1986), this claim must fail—the SABIS defendants acted toward their own company, not a third party.

With regard to the second claim, there are two deficiencies. First, since the court has concluded that plaintiff did not have an employment relationship with the Foundation, the complaint's allegation that plaintiff had a valid expectation that his relationship with Foundation "would continue to strengthen" makes little sense. Moreover, if the court construes the complaint

as alleging that plaintiff had a reasonable expectation of a *future* relationship with the Foundation, the claim nevertheless fails: plaintiff has not alleged any basis whatever for his expectation of a future relationship with the Foundation. *See Williams,* 145 Ill.App.3d at 569, 99 Ill.Dec. 412, 495 N.E.2d 1147 ("[T]he mere hope of continued employment, without more, does not ... constitute a reasonable expectancy as must exist to state a cause of action for tortious interference"). Therefore, count VI(D) against the individual SABIS defendants is dismissed.

## IX. RETALIATORY DISCHARGE

The individual SABIS defendants, the Foundation, and the individual Foundation defendants move to dismiss count VI(F), which alleges that "defendants" wrongfully discharged plaintiff for his objections to SABIS's illegal practices, in violation of Illinois public policy.

### A. Individual SABIS and Foundation Defendants

■ The individual defendants argue that plaintiff may bring a claim for retaliatory discharge only against his *employer.* Illinois courts recognize the tort of retaliatory discharge as a narrow exception to the general rule that an employer may discharge an at-will employee for any or no reason. *See Buckner v. Atlantic Plant Maintenance, Inc.,* 182 Ill.2d 12, 17, 230 Ill.Dec. 596, 694 N.E.2d 565 (Ill.1998). The Illinois Supreme Court held recently that the "only proper defendant in a retaliatory discharge action is the plaintiff's former employer." *Buckner,* 182 Ill.2d at 22, 230 Ill.Dec. 596, 694 N.E.2d 565. That is, a retaliatory discharge action may not be brought against an "employee or agent of [plaintiff's] former employer who effected the discharge on behalf of the employer." *Id.* at 16, 230 Ill.Dec. 596, 694 N.E.2d 565.

Applying *Buckner,* to the extent that count VI(F) names individual SABIS and Foundation defendants,[5] it is dismissed as to the individual defendants.

### B. The Foundation

Likewise, because the court has already concluded that the exhibits to the complaint demonstrate that the Foundation was not plaintiff's employer, count VI(F) against the Foundation is dismissed.

## X. PERSONAL JURISDICTION

Defendants Reddick and Schulz have filed a motion under Fed.R.Civ.P. 12(b)(2) to dismiss for lack of personal jurisdiction. Reddick is SABIS's General Counsel. Schulz is SABIS's Vice President/Business Development. Reddick and Schulz are named defendants in six of plaintiff's 13 causes of action: § 1981; § 1985; § 1983; tortious interference with contract; tortious interference with prospective business advantage; and wrongful discharge. The court has already dismissed all counts against Schulz, and all counts against Reddick except § 1981. Therefore, the only personal jurisdiction question remaining to address is whether the court has personal jurisdiction over defendant Reddick with respect to plaintiff's § 1981 count.

According to his affidavit, Reddick has no independent contacts with the state of Illinois apart from his duties on behalf of SABIS: he is a Minnesota resident; works at the SABIS office in Minnesota; owns no property in Illinois; pays no taxes to Illinois taxing authorities; and conducts no business in Illinois independent of his activities as SABIS's General Counsel. In addition, Reddick claims that he performed the acts in question "at the direction of Ralph Bistany." Accordingly, Reddick argues that it would violate Illinois due process for this court to exercise jurisdiction over him.

---

**5.** Count F refers only to "defendants." It fails to delineate which specific defendants are included in the count. The court will therefore assume that all defendants were included.

On a motion to dismiss, the plaintiff has the burden to make a prima facie showing that personal jurisdiction exists. *See Michael J. Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724 (7th Cir.1994). The court accepts all well-pleaded facts in plaintiff's complaint as true unless controverted by defendant's affidavits, *see Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987), and resolves conflicts between the affidavits in plaintiff's favor. *See id.*

This court has jurisdiction over a non-consenting, non-resident defendant only if an Illinois state court would have jurisdiction. *See McIlwee v. ADM Industries, Inc.*, 17 F.3d 222, 223 (7th Cir.1994). An Illinois state court has jurisdiction if jurisdiction comports with the Illinois and the United States Constitutions. *See RAR v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir.1997).[6]

Personal jurisdiction must comply with the Illinois Constitution, or more specifically, Illinois due process. While the Illinois Supreme Court has offered little guidance as to how state due process differs from federal due process in the personal jurisdiction context, it has explained that "jurisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Rollins v. Ellwood*, 141 Ill.2d 244, 275, 152 Ill.Dec. 384, 565 N.E.2d 1302 (Ill.1990). Reddick argues that it would violate Illinois due process to require him to defend an action in Illinois for events arising out of his activities as an agent of SABIS and on SABIS's behalf. Specifically, he argues that the "fiduciary shield" doctrine prevents this court from exercising jurisdiction over him.

In certain circumstances, Illinois due process mandates a "fiduciary shield" defense to personal jurisdiction as a matter of law. *See Rollins*, 141 Ill.2d at 280, 152 Ill.Dec. 384, 565 N.E.2d 1302. The fiduciary shield doctrine denies personal jurisdiction over an individual whose "presence and activity in the state in which the suit is brought were solely on behalf of his employer or principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir.1994). The rationale underlying the doctrine is that, "[i]t is unfair and unreasonable ... to assert personal jurisdiction over an individual who [sought] the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins*, 141 Ill.2d at 280, 152 Ill.Dec. 384, 565 N.E.2d 1302.

There are two important limitations to the shield: (1) the shield is removed if the individual's personal interests motivated his actions, *see Rice*, 38 F.3d at 912; and (2) the shield generally does not apply when the individual's actions are discretionary. *See Brujis v. Shaw*, 876 F.Supp. 975, 978 (N.D.Ill.1995). As noted, the fiduciary shield denies personal jurisdiction if the individual's actions were "solely on behalf of his employer." *Rice*, 38 F.3d at 912. If the individual "was acting *also* on his own behalf—to serve his personal interests," the shield does not apply. *Id.* (emphasis added). The personal interests need not be pecuniary—they may be dislike or malice towards the plaintiff. *See id.; Roy v. Austin Co.*, 1994 U.S.Dist. LEXIS 16254 at *6–7 (N.D.Ill. 1994) (holding, on a motion to dismiss, that plaintiff's allegation that defendant's actions were "without justification based on the legitimate business interests of [the employer], and were performed maliciously" was sufficient to prove actions taken to serve personal interests). However, a de-

---

6. Jurisdiction must also comport with the Illinois long-arm statute. However, because the long-arm statute grants jurisdiction "on ... any basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States," 735 ILCS 5/2–209(c), the three inquiries "collapse into two constitutional inquiries—one state and one federal." *RAR*, 107 F.3d at 1276

fendant who dislikes or acts maliciously towards a plaintiff will not necessarily lose the fiduciary shield. Instead, the dislike must "have created or exacerbated the harm to the [plaintiff]." *Rice,* 38 F.3d at 912.

The complaint alleges that Reddick's actions were "willful, malicious or with wanton disregard for Plaintiff's rights." However, nothing in the complaint infers that Reddick's actions toward plaintiff created or exacerbated the harm toward plaintiff. To the contrary, the allegations suggest that Reddick was merely carrying out Ralph Bistany's order to terminate plaintiff. Moreover, Reddick stated in his affidavit that his actions were "at the direction of Mr. Ralph Bistany." Plaintiff has failed to submit affidavits contradicting this statement.

The "discretion" factor also supports application of the fiduciary shield in this case. The shield generally should not apply where the "employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction." *Brujis v. Shaw,* 876 F.Supp. 975, 978 (N.D.Ill.1995); *see also Ruca Hardware, Ltd. v. Chien,* 1994 WL 548196 at 7, 1994 U.S.Dist. LEXIS 14064 at *12 (N.D.Ill.1994). In establishing the fiduciary shield doctrine in *Rollins,* the Illinois Supreme Court suggested that the element of compulsion involved in an employee's contacts with Illinois made it unfair to assert jurisdiction over him later. *See Rollins,* 141 Ill.2d at 279–80, 152 Ill. Dec. 384, 565 N.E.2d 1302. *Rollins* involved a wrongful arrest suit brought against a Baltimore, Maryland officer who effectuated an arrest in Illinois. Stressing the absence of discretion in that case, the Supreme Court stated:

Because [the police officer's] conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests, we conclude that it would be unfair to use this conduct to assert personal jurisdiction over him as an individual.... In practical terms, an employee, especially one in

[the police officer's] position, has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer. *Id.*

Similar to *Rollins,* the complaint and Reddick's affidavits establish that Ralph Bistany compelled Reddick to terminate plaintiff. Plaintiff alleges nothing to suggest that Reddick had any discretion whether or not to execute Bistany's directive.

For the foregoing reasons, the court concludes that the fiduciary shield doctrine bars the court's jurisdiction over Reddick. Accordingly, Reddick is dismissed as a defendant in this action.

## CONCLUSION

SABIS's motion to dismiss counts V(C), V(E), VI(C) and VI(E) is granted. SABIS's motion to dismiss count V(B) is denied. The individual SABIS defendants' motion to dismiss counts V(B), V(C), V(E), VI(F), VI(C), VI(E) and VI(F) is granted. The Foundation's motion to dismiss counts V(A), V(B), V(C), V(E), V(F), VI(C), VI(E) and VI(F) is granted. The individual Foundation defendants' motion to dismiss counts V(C), V(E), VI(C), VI(E) and VI(F) is granted. The individual Foundation defendants' motion to dismiss count V(B) is granted with respect to defendant Murphy and is denied with respect to defendant Livney. Defendant Schulz' motion to dismiss for lack of personal jurisdiction is denied as moot. Defendant Reddick's motion to dismiss for lack of personal jurisdiction is granted. Plaintiff is ordered to file a second amended complaint conforming to this opinion on or before May 19, 1999. The complaint should set forth the claims in numbered sections (as opposed to federal and state categories as in the original and amended complaints). In addition, each claim should separately identify which defendants are named. The remaining defendants shall respond to the second amended complaint on or before June 9, 1999. This matter is set for a report on

status June 22, 1999, at which time the parties are directed to present a proposed joint, definitive discovery plan.