**Jamie RIESTER, Plaintiff,**

v.

**RIVERSIDE COMMUNITY SCHOOL, et al., Defendants.**

No. C–1–01–850.

United States District Court, S.D. Ohio, Western Division.

Dec. 18, 2002.

Jennifer Lynn Branch, Alphonse Adam Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, for plaintiff.

Felix John Gora, Rendigs Fry Kiely & Dinnius, LLP, Cincinnati, OH, for Riverside Community School, defendant.

William J. O'Neill, Dan L. Makee, Michele Smolin, McDonald, Hopkins, Burke & Haber, Cleveland, OH, for White Hat Management LLC, Raymond Lambert, WHLS of Ohio, LLC, defendants.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant Riverside Community School, Inc.'s Motion to Dismiss (doc. 32), Defendants' WHLS of Ohio, LLC, White Hat Management, LLC, and Raymond Lam-

bert's Motion to Dismiss (doc. 36), Plaintiff's Memorandum in Opposition to All Defendants' Motions to Dismiss (doc. 41), Defendants' WHLS of Ohio, LLC, White Hat Management, LLC, and Raymond Lambert's Reply in Support of Motion to Dismiss (doc. 42), and Defendant Riverside Community School, Inc.'s Reply Memorandum in Support of Its Motion to Dismiss (doc. 43). A hearing was held on Wednesday, November 20, 2002, regarding this matter.

## FACTS

Plaintiff, Jamie Riester, alleges that Defendants retaliated against her for exercising her right to free speech in violation of 42 U.S.C. § 1983. Plaintiff was a kindergarten teacher for Defendant Riverside Community School, Inc. (hereinafter "Riverside") which is a community school located in Cincinnati and organized under Ohio Revised Code (hereinafter, "O.R.C.") § 3314.01 *et. seq* (doc. 27). Plaintiff began her teaching career at Riverside in 1999 and her contract was renewed in 2000 for the 2000–2001 academic year (*Id.*). Riverside contracted with Defendant WHLS of Ohio, LLC (hereinafter "WHLS") and Defendant White Hat Management, LLC (hereinafter "White Hat") to completely manage & operate Riverside (*Id.*). WHLS and White Hat are Nevada corporations doing business in Ohio (*Id.*). Pursuant to this Management Agreement, WHLS/White Hat agreed to provide Riverside with all functions related to the provision of educational services as well as operations of the school including personnel, training, school administration, teachers, support staff, and employment of personnel (*Id.*). Defendant Raymond Lambert is the principal at Riverside (*Id.*).

Plaintiff became concerned with a particular student, Johnny Doe, during the 2000–2001 academic year (*Id.*). Plaintiff was worried that Johnny's emotional disabilities and special educational needs

were not being met by Riverside (*Id*). By March of 2001, Plaintiff claims Johnny became dangerous to himself and to others (*Id.*). Plaintiff maintains that Johnny assaulted his classmates, physically abused himself, and threatened harm to his classmates on a daily basis (*Id.*). On March 1 and March 6 of 2001, Plaintiff was particularly alarmed by Johnny's behavior (*Id.*). On these dates, Johnny was smacking his head against the cement walls of the classroom and clawing and punching at his own face (*Id.*). On March 6, 2001, Plaintiff took Johnny to Defendant Lambert's office, to show Lambert Johnny's injuries (*Id*).

Plaintiff claims that Defendant Lambert's only response was to question Johnny as to why he was hitting himself (*Id.*). Plaintiff claims that subsequent to her taking Johnny to Defendant Lambert's office she sought help from Barry Williams, Riverside School Counselor (*Id.*). Williams responded by calling the mobile crisis unit at Children's Hospital (*Id*). The mobile crisis unit quickly arrived and attended to Johnny (*Id.*). Plaintiff then contacted other agencies in an attempt to acquire for Johnny appropriate services and to report potential abuse or neglect directed toward Johnny (*Id.*). Defendant Lambert asserts, however, that he contacted Barry Williams concerning Johnny's emotional problems (doc. 36).

Plaintiff claims she raised additional concerns about Riverside's special education practices, including the employment of unqualified aides in the classrooms, on a number of occasions (doc. 27). On March 11, 2001, Plaintiff wrote a letter to Defendant Lambert outlining her concerns for Johnny's safety and education needs (*Id.*). Plaintiff maintains that she handed the letter to Defendant Lambert and indicated that the matter was urgent (*Id.*) According to Plaintiff, Defendant Lambert simply

tossed the letter on his desk and walked out of his office (*Id.*). Plaintiff maintains that Defendant Lambert never responded to this letter (*Id.*). In contrast to Plaintiff's allegations, Defendant Lambert asserts that he contacted Ron Greene, White Hat's Director of Academies (doc. 36).

On March 14, 2001, Plaintiff contacted the Akron office of White Hat and reported her concerns that Johnny was being denied appropriate educational services (*Id.*). Plaintiff complained to White Hat about other emotionally disabled children who were being denied special education services (*Id.*). On March 15, 2001, Ron Greene met with Defendant Lambert and Plaintiff regarding Plaintiff's complaints (*Id.*). Defendant Lambert, according to Plaintiff, was furious with Plaintiff for raising these concerns to White Hat (*Id.*). Defendant Lambert claims that Plaintiff reacted in an insubordinate manner (doc. 36). Defendant Lambert fired Plaintiff on March 21, 2001 (doc. 27).

## PROCEDURAL HISTORY

Plaintiff initially filed her Complaint on December 6, 2001 (doc. 1). On January 8, 2002, Riverside filed an Answer and a Cross-claim against White Hat (doc. 7). On January 8, 2002, Riverside also filed a Motion to Dismiss (doc. 8). On March 12, 2002, White Hat and Defendant Lambert filed a Motion to Dismiss (doc. 20). On April 18, 2002, a hearing was held before the Court concerning the two motions to dismiss filed by the Defendants. At this hearing, Plaintiff asked the Court and the Court granted leave for the Plaintiff to file an amended complaint (doc. 25). On May 31, 2002, Plaintiff filed her Amended Complaint in which she added WHLS as a defendant (doc. 27). The various Defendants then filed their Motions to Dismiss Plaintiff's Amended Complaint (docs. 32 and 36).

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed.R.Civ.P. 8(a), which states that, a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (overruled on other grounds). Rule 8(a)(2) operates to provide the defendant with "fair notice of what plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A court examines a complaint in light of the objectives of Rule 8 using the standard articulated in *Jones v. Sherrill,* 827 F.2d 1102, 1103 (6th Cir. 1987):

> In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

*Jones,* 827 F.2d at 1103.

The admonishment to liberally construe the plaintiff's claim when evaluating a Rule 12(b)(6) dismissal does not relieve a plaintiff of his obligation to satisfy federal notice pleading requirements and allege more than bare assertions of legal conclu-

sions. 5A Wright & Miller, Federal Practice and Procedure: § 1357 at 596 (1969). "In practice, a complaint ... must contain either direct or inferential allegations respecting all of the material elements [in order] to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985) (quoting *In Re: Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir.1981), *cert. denied,* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983)). The United States Court of Appeals for the Sixth Circuit clarified the threshold set for a Rule 12(b)(6) dismissal:

> [W]e are not holding the pleader to an impossibly high standard; we recognize the policies behind Rule 8 and the concept of notice pleading. A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. But when a complaint omits facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist.

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir.1988).

## DEFENDANT RIVERSIDE'S MOTION TO DISMISS

■ In the interests of clarity, the Court will first dispose of Defendant Riverside's Motion to Dismiss. Having reviewed this matter, the Court finds that Riverside was Plaintiff's employer. The Court therefore rejects Defendant's assertion that Plaintiff has failed to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) (doc. 32).

The employment agreement in question stated that the contract was made between WHLS of Ohio-*Riverside,* and Defendant Lambert signed the contract "Riverside Academy" (doc. 41). The Court also notes that Defendant Lambert was the person to whom Plaintiff complained, and that he was the individual who fired Plaintiff. Riverside's claims that it had no control over Plaintiff's actions and that it had no control over WHLS relative to WHLS' employees are therefore hollow (doc. 32). Given this, the Management Agreement between WHLS and Riverside, which states no employee of either party should be deemed an employee of the other, is insufficient to support a Motion to Dismiss.

## DEFENDANTS' WHLS, WHITE HAT, AND LAMBERT'S MOTION TO DISMISS

■ The Court finds that WHLS, White Hat, and Defendant Lambert (collectively "Defendants"), are indeed state actors as contemplated by 42 U.S.C. § 1983 and Plaintiff's Complaint is adequate to sustain such a claim. Section 1983 establishes a cause of action for those deprivations of right accomplished "under color of state law." In properly stating a claim under Section 1983, Plaintiff must allege: (1) that she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was occasioned by a person acting under color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

Private actors can only be held liable under Section 1983 if their "actions so approximate state action that they may be fairly attributed to the State" *Lansing v. City of Memphis,* 202 F.3d 821, 828 (6th Cir.2000). There are four tests courts use to determine when private conduct may be attributed to the state. These tests are: (1) the public function test, (2) the state compulsion test, (3) the symbiotic relationship/nexus test; and (4) the "entwinement" test. *Lansing,* 202 F.3d at 828 (setting forth the first three above mentioned tests) and *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.,* 531 U.S. 288, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)

(establishing the fourth test—that of "entwinement").

The Court agrees with Plaintiff that Defendants "acted under color of state law." First, the Court agrees with Plaintiffs that Defendants are state actors because the actions of community schools are, by Ohio statute, public (doc. 41). Plaintiff cites O.R.C. § 3314.01(B), which states "[a] community school created under this chapter is a public school independent of any school district, and is part of the state's program of education" (doc. 41). The Court agrees with Plaintiff that this ends the inquiry (*Id.*). Riverside, and by extension WHLS and White Hat (as Riverside's management companies) and Defendant Lambert (as Riverside's employee) are, therefore, also state actors.

While the Court agrees with Defendant that *Jones v. Sabis Educ. Sys.*, 52 F.Supp.2d 868, 876 (N.D.Ill.1999) and *Daugherty v. Vanguard Charter Sch. Acad.*, 116 F.Supp.2d 897 (W.D.Mich.2000) are not dispositive, the Court finds these cases instructive. These cases have determined that charter or community schools are state actors (doc. 41). The Court also agrees with Plaintiff that, for purposes of Section 1981, the *Jones* court determined that because a charter school was a public school it was a "governmental body" (doc. 41). According to Plaintiff, the *Daugherty* court assumed, without analysis, that a Michigan charter school was subject to separation of church and state provisions because it was a public school (*Id.*).

The Court further agrees with Plaintiff that Defendants are state actors under the public function and entwinement tests. Under the public function test, Defendants are state actors because they provide a traditional state function—in that they provide free, public education to Ohio students. The United States Supreme Court established that state action is present when government delegates to a private entity functions that are historically and exclusively governmental in nature *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974); *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); and *Flagg Bros., Inc. v. Brooks*, 436 U.S. at 163, 98 S.Ct. 1729. The Court agrees with Plaintiff that free, public education, whether provided by public or private actors, is an historical, exclusive, and traditional state function (doc. 41).

Defendants' reliance on *Rendell–Baker* is misplaced. Defendants cite *Rendell–Baker*, 457 U.S. at 842, 102 S.Ct. 2764 for the proposition that the question is not whether a private group is serving a public function, but rather whether the function performed has traditionally been the bailiwick of the state (doc. 42). Defendants argue that the current situation is indistinguishable from *Rendell–Baker* (*Id.*). It is true that many of the facts which the court in *Rendell–Baker* identified as weighing against finding state action are present in the situation immediately before us (*e.g.* both schools were operated by purely private entities without direct involvement of any public officials; no public officials were involved in the firing decision[s]; the employees of the school, pursuant to terms of the contract with the relevant state, were not city, state, or school board employees; and both schools were physically located on privately owned property).

However, the Court agrees with Plaintiff that there are important facts that distinguish the case before us. The Court finds significant the fact that the New Perspectives School at issue in *Rendell–Baker* was brought into existence through the actions of private individuals and subsequently sold its services to governmental bodies. Unlike the New Perspectives School, Riverside Academy relied on the approval of the State Board of Education for its cre-

ation. In short, the Court agrees with Plaintiff that because Riverside Academy was created only with the help of the state, the Court must consider its actions to be those of the State. The Court also finds persuasive Plaintiff's argument that Riverside Academy, as a charter school, is subject to various rules and regulations to which private schools are not.

The Court further agrees with Plaintiff that the entwinement test must lead to the conclusion that the Defendants are state actors. Plaintiff cites *Evans v. Newton,* 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) for the proposition that private conduct may become so "entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations on state actors" (doc. 41). The Court agrees with Plaintiff's argument that Defendants have been granted the authority to provide free public education to all students in a nondiscriminatory manner; no other entity, Plaintiff asserts, has been so mandated by the State of Ohio besides local school districts (*Id.*). As such, the Court finds Defendants' conduct so "entwined with governmental policies" that the Court must consider them public actors subject to the constitutional limitations on state actors.

Finally, the Court finds it necessary to address Defendants' reliance on *Logiodice v. Trustees of Maine Central Institute,* 296 F.3d 22 (2002). Defendants argue that this case, like *Rendell–Baker,* is indistinguishable from the case before the Court today. The Court agrees that a number of similarities exist. However, once again, the Ohio Statute which allowed for the creation of the Riverside School provides the crucial difference. The language of O.R.C. § 3314.01, "[a] community school created under this chapter is a public school" could not be more clear. Nothing in the *Logiodice* case points to the exis-

tence of a similar, relevant statutory provision.

## CONCLUSION

The Court thus finds that Plaintiff's Complaint alleges sufficient facts to establish that Riverside was Plaintiff's employer and that Riverside is responsible for the actions of Defendant Lambert. The Court also finds Plaintiff has alleged sufficient facts to establish that Defendants Lambert, WHLS, and White Hat Management are state actors. Therefore, the Court hereby DENIES Defendant Riverside's Motion to Dismiss (doc. 32), and Defendants' Defendant Lambert, WHLS, and White Hat Management Motion to Dismiss (doc. 36).

SO ORDERED.